1  MARC J. GOTTRIDGE, ESQ.
   *(Pro Hac Vice Submitted on 11/20/12)*
2  DAVID R. MICHAELI, ESQ.
   *(Pro Hac Vice Submitted on 11/20/12)*
3  HOGAN LOVELLS US LLP
   875 Third Avenue
4  New York, NY 10022
   Telephone: (212) 918-3000
5  Facsimile:  (212) 918-3100
   Email: marc.gottridge@hoganlovells.com
6         david.michaeli@hoganlovells.com

7
   D. NEAL TOMLINSON, ESQ.
8  Nevada Bar No. 6851
   KELLY H. DOVE, ESQ.
9  Nevada Bar No. 10569
   SNELL & WILMER L.L.P.
10 3883 Howard Hughes Parkway, Suite 1100
   Las Vegas, NV  89169
11 Telephone: (702) 784-5200
   Facsimile:  (702) 784-5252
12 Email: ntomlinson@swlaw.com
          kdove@swlaw.com
13

14 *Attorneys for Defendant B+S Card Service GmbH*

15              **UNITED STATES DISTRICT COURT**

16                 **DISTRICT OF NEVADA**

17 STELLIA LIMITED, a Maltese limited
   liability company; and STELLIA, LTD., a      Case No. 2:12-CV-1099-GMN-PAL
18 Nevada limited liability company,

19                 Plaintiffs,

20 vs.

21 B+S CARD SERVICE GmbH, a German        **MOTION TO DISMISS THE**
   limited liability company,                      **COMPLAINT**
22

23                 Defendant.

24

25

26

27

28

*Snell & Wilmer*
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

    A.    B+S and Its Purely European Business ................................................. 2

    B.    B+S Conducts No Business in Nevada or Elsewhere in the U.S. ................... 3

    C.    Stellia Malta and Its Agreement With B+S ........................................... 4

    D.    The Relevant Witnesses and Documents Are Located Almost Exclusively
        in Germany or Elsewhere in Europe .................................................... 5

ARGUMENT ................................................................................................. 7

I.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL
    JURISDICTION ...................................................................................... 7

    A.    Exercising Personal Jurisdiction Over B+S Under Rule 4(k)(2) Would
        Violate Due Process ...................................................................... 9

        1.    Exercising General Jurisdiction Over B+S Would Violate Due
            Process ............................................................................ 9

        2.    Exercising Specific Jurisdiction Over B+S Would Violate Due
            Process ............................................................................ 10

            a.    B+S Has Not Purposefully Availed Itself of the Privilege
                of Conducting Business Activity in the U.S. ....................... 11

            b.    Stellia's Claims Arise Solely Out of European – Not U.S.
                Contacts ......................................................................... 13

            c.    Exercising Personal Jurisdiction Over B+S Would be
                Manifestly Unreasonable ................................................. 13

    B.    Stellia Has No Cognizable Federal Claim Against B+S as Its Lantham
        Act Claim Must be Dismissed Under Rule 12(b)(6) ................................ 15

        1.    Stellia Malta Has Not Alleged the Elements of Lantham Act
            Claim .............................................................................. 16

        2.    The Lantham Act Does Not Apply to B+S's Purely Foreign
            Conduct .......................................................................... 18

        3.    The Alleged Statements are Non-Actionable "Puffery" ................... 20

II.    THE COMPLAINT MUST BE DISMISSED BECAUSE THE AGREEMENT
    BARS STELLIA MALTA FROM SUING B+S IN THIS COURT ........................ 21

i

# TABLE OF CONTENTS
## (cont.)

Page

III. THE COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS* ............................................................... 24

IV. THIS COURT SHOULD DECLINE TO EXERCISE PERSONAL JURISDICTION OVER PLAINTIFFS' – GERMAN LAW – CLAIMS ........... 27

CONCLUSION ................................................................................. 28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**TABLE OF AUTHORITIES**

Page

**CASES:**

*Alexander v. Circus Circus Enters., Inc.,* 972 F.2d 261, 262 (9th Cir. 1992) ........................ 8

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 103 (1987) ............................ 14

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ................................................. 19

*Avelar v. Youth & Family Enrichment Servs.,* 364 Fed. Appx. 358, 359 (9th Cir. 2010) ......... 27

*Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007) ............................................... 19

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) ...................................... 9

*CH2O, Inc. v. Bernier,* No. C11-5153RJB, 2011 WL 1485604, at *1, 4

     (W.D. Wash. Apr. 18, 2011) ............................................................. 24

*Chan v. Society Expeditions, Inc.,* 123 F.3d 1287, 1296-97 (9th Cir. 1997) ....................... 22

*CIM Int'l v. United States,* 641 F.2d 671, 674 (9th Cir. 1980) .................................... 22

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 245

     (9th Ci. 1990) ...................................................................... 20

*Creative Tech, Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 699 (9th Cir. 1995) ........... 24, 25, 26

*Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 29 (2003) ...................... 16

*Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 763 (9th Cir. 1989) ............................ 23

*Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001) ......................................... 12

*Doe 1 v. AOL LLC,* 552 F.3d 1077, 1087 n.1 (9th Cir. 2009) ...................................... 22

*Dow Chem. Co. v. Calderon,* 422 F.3d 827, 831 (9th Cir. 2005 ..................................... 9

*Facebook, Inc. v. Studivz Ltd.,* No. C 08-3468 JF(HRL), 2009 WL 1190802, at *3

     (N.D. Cal. May 4, 2009) .............................................................. 24

*Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 302-03 (9th Cir. 1986) ................. 13

*Fraser v. Smith,* 594 F.3d 842, 849 (11th Cir. 2010) ............................................. 13

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1125

     (9th Cir. 2002) ............................................................. 10, 11, 14

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

i

# TABLE OF AUTHORITIES
### (cont.)

Page

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011) ............. 9, 10

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947) .................................................... 25

*Hanson v. Denckla,* 357 U.S. 235, 253 (1958) ...................................................... 10, 11

*Holck v. Bank of N.Y. Mellon Corp.,* 769 F. Supp. 2d 1240, 1254 (D. Hawaii 2011) .............. 24

*Holland America Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 461

    (9th Cir. 2007) ................................................................................... 8, 9, 12, 13

*In re Air Crash Over Mid-Atl. On June 1, 2009,* 760 F. Supp. 2d 832, 844 n.8

    (N.D. Cal. 2010) ................................................................................. 15

*Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 319 (1945) ................................................. 9, 10

*J. McIntyre Mach., Ltd. v. Nicastro,* 131 S. Ct. 2780, 2787 (2011) ............................ 10, 11

*Kukje Hawaje Ins. Co. v. M/V Hyundai Liberty,* 408 F.3d 1250, 1254 (9th Cir. 2005) ........... 21

*LNV Corp. v. STK Fin., LLC,* No. C-11-00025 SBA, 2011 WL 4345193

    (N.D. Cal. Sept. 14, 2011) ....................................................................... 22

*Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 768-9

    (9th Cir. 1991) ................................................................................. 24, 25

*Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 608 (9th Cir. 2010) ................... 8, 18, 20

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,* 583 F.3d 656, 666

    (9th Cir. 2009) ................................................................................. 24, 26

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 514 (9th Cir. 1988) .................. 21, 23

*Mattell, Inc. v. Greiner and Hausser GmbH,* 354 F.3d 857, 868 (9th Cir. 2003) ................. 24

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.,* No. C 06-7541 PJH,

    2007 WL 2288329, at *9 (N.D. Cal. Aug. 9, 2007) .......................................... 17

*Moreno v. Omnilife USA, Inc.,* No. 09-55672, 2012 WL 1893546, at *1

    (9th Cir. May 25, 2012) ......................................................................... 24

*Morrison v. Nat'l Australian Bank Ltd.,* 130 S. Ct. 2869, 2877 (2010) ........................... 18

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## TABLE OF AUTHORITIES
### (cont.)

Page

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18 (1972) ......................................... 22

*Newcal Indus. Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1052 (9th Cir. 2008) ............. 16, 20

*Northrop Corp. v. Triad Int'l Mktg. S.A.,* 811 F.2d 1265, 1270 (9th Cir. 1987) .................. 21

*Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ................. 20, 21

*Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 207 (9th Cir. 1995) ..................... 11

*Pac. Atl. Trading Co. v. M/V Main Exp.,* 758 F.2d 1325, 1331 (9th Cir. 1985) ..................... 15

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n.2 (9th Cir. 1998) ........................ 20

*Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006) .................. 9, 10, 11, 12, 13

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 259 (1981) ......................................... 25, 26

*Prof'l Courier & Logistics, Inc. v. NICA, Inc.,* No. 2:12-cv-00054, 2012 WL 1120675,

    At *1 (E.D. Cal. Apr. 3, 2012) ......................................... 23

*Provincial Gov't v. Placer Dome, Inc.,* No. 2:05-CV-01299, 2008 WL 6915277, at *22

    (D. Nev. Jan. 16, 2008); *rev'd in part on other grounds,* 582 F.3d 1083

    (9th Cir. 2009) ......................................... 26

*RA Med. Sys., Inc. v. PhotoMedex,* 373 Fed. Appx. 784, 787 n.3 (9th Cir. 2010) ................. 17

*Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1181 (9th Cir. 2003) ......................................... 18

*Richards v. Lloyd's of London,* 135 F.3d 1289, 1295 (9th Cir. 1998) ............................... 23

*RPost Holdings, Inc. v. Trustifi Corp.,* No. CV 11-2118 PSG (SHx),

    2011 WL 4802372 at *4 (C.D. Cal. Oct. 11, 2011) ................................... 17

*Schwartzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004) ............... 7, 11

*Sinochem Intern. Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431 (2007) ................. 7

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,* 769 F.2d 1393, 1395 (9th Cir. 1985) ............ 18, 19

*Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007) ......................................... 21

*Tamburo v. Dworkin,* 601 F.3d 693, 699-701 n.6 (7th Cir. 2010) .................................. 21

## TABLE OF AUTHORITIES
### (cont.)

Page

*ThermoLife Int'l, LLC v. Gaspari Nuitrition, Inc.,* No. CV 11-01056-PHX-NVW,

    2011 WL 6296833, at *4-5 (D. Ariz. Dec. 16, 2011) ............................................ 17

*Timberland Lumber Co. v. Bank of Am. National Trust & Savings Ass'n,* 549 F.2d 597

    (9th Cir. 1976) ............................................................................................................ 18

*TransFresh Corp. v. Ganzerla & Assoc., Inc.,* No. C-11-06348-JCS,

    2012 WL 994674, at *6 (N.D. Cal. Mar. 23, 2012) ........................................ 16, 17, 18

*Vivendi SA v. T-Mobile USA Inc.,* 586 F.3d 689, 696 (9th Cir. 2009) ................... 15, 25, 26

*Vogt-Nem, Inc. v. M/V Tramper,* 263 F. Supp. 2d 1226, 1261 (N.D. Cal. 2002) ................. 24

*Yahoo! Inc. v. La Ligue Contre Lle Racisme et L'Antisemitisme,* 379 F.3d 1120, 1137

    (9th Cir. 2004) ............................................................................................................ 14

*Ybarra v. Ocwen Loan Servicing, LLC,* No. 2:10-cv-01642-GMN-LRL,

    2011 WL 6002926, at *1-2 (D. Nev. Nov. 30, 2011) ............................................... 16

*Young v. Actions Semiconductor Co.,* 386 Fed. Appx. 623, 626 (9th Cir. 2010) ................. 10

### RULES & STATUTES:

15 U.S.C. § 1125(a), Section 43(a) (Lanham Act) .... 1, 9, 15, 6, 17, 18, 19, 20, 21, 22, 24, 25, 27

28 U.S.C. § 1367(c)(3) ............................................................................................ 1, 7, 27

Federal Rule of Civil Procedure 4(k)(2) ......................................... 8, 9, 10, 11, 13, 15, 21

Federal Rule of Civil Procedure 8 ........................................................................... 17

Federal Rule of Civil Procedure 9(b) ................................................................ 16, 18

Federal Rule of Civil Procedure 12 .................................... 1, 9, 14, 16, 20, 21, 27

### TABLE OF AUTHORITIES
#### (cont.)

Page

**MISCELLANEOUS REFERENCES:**

Due Process Clause ............................................................ 8, 9, 10, 11, 14, 15

Doctrine of *forum non conveniens* ....................................... 1, 7, 15, 24, 25

European Council Regulation (EC) No 1206/2001 ................................... 15

Restatement (Second) Conflict of Laws § 145 ...................................... 23

Securities and Exchange Act ....................................................... 18

1        Defendant, B+S Card Service GmbH ("**B+S**"), by and through its counsel of record, the

2    law firms of Snell & Wilmer L.L.P. and Hogan Lovells US LLP, hereby moves to dismiss in its

3    entirety the Complaint of Plaintiffs Stellia Limited ("**Stellia Malta**") and Stellia, LTD. ("**Stellia**

4    **Ltd.**") (collectively, "**Plaintiffs**" or "**Stellia**"), pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and

5    12(b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1367(c)(3), and the doctrine of

6    *forum non conveniens.*

7    **PRELIMINARY STATEMENT**

8        This action simply does not belong in this Court.  Stellia's claims arise out of a contractual

9    dispute between two European entities.  Their contract, made in Europe, clearly provides that it is

10   governed by German law and that any disputes will be litigated in Frankfurt am Main, Germany.

11   The parties' dispute is exclusively centered in Europe.  No event described in the Complaint took

12   place in the U.S., and defendant B+S conducts no business in this country.

13       Stellia has nevertheless attempted to manufacture a supposed basis for suing B+S in this

14   Court through two maneuvers.  *First*, plaintiff Stellia Malta, a Maltese company with its principal

15   place of business in Malta – the entity with which B+S, a German company, contracted –

16   purportedly assigned certain of its claims to a Nevada-incorporated affiliate – with which B+S

17   never dealt – in order to create the semblance of a connection to this forum.  *Second*, Stellia Malta

18   has attempted to bootstrap its intra-European contractual dispute with B+S into a federal-question

19   action through a spurious "false advertising" claim under the Lanham Act.

20       These transparent ploys are unavailing.  The Complaint should be dismissed as a matter of

21   law for several independently sufficient reasons: (1) this Court lacks personal jurisdiction over

22   B+S; (2) Stellia Malta contractually waived its right to bring its claims anywhere but Germany;

23   (3) the doctrine of *forum non conveniens* warrants dismissal; and (4) Stellia Malta's Lanham Act

24   claim fails to state a claim, as a result of which this Court should decline to exercise supplemental

25   jurisdiction over Plaintiffs' other claims, arising under German law, as provided by 28 U.S.C. §

26   1367(c).

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1

**STATEMENT OF FACTS**[1]

2   **A.      B+S and Its Purely European Business**

3         B+S is a limited liability company ("*Gesellschaft mit beschränkter Haftung*") organized

4   under German law, with its principal place of business in Frankfurt am Main, Germany.  (Pip

5   Decl. ¶ 2; Compl. ¶ 6.)  B+S is registered with the commercial register at the *Amtsgericht*

6   *Frankfurt am Main, i.e.*, the local court in Frankfurt am Main, and is approved and regulated as a

7   European payment institution by the German Federal Financial Supervisory Authority, BaFin

8   ("*Bundesanstalt für Finanzdienstleistungsaufsicht"*).  (Pip Decl. ¶¶ 2-3.)

9         B+S is owned entirely by other German entities, all of which are, or are affiliated with,

10   banks owned by the governments of states ("*Länder*") of the Federal Republic of Germany or

11   German saving banks.[2]  All of the members of B+S's Board of Directors and Supervisory Board

12   reside in Germany, and all of B+S's shareholders', Board of Directors and Supervisory Board

13   meetings take place in Germany.  B+S has no subsidiaries.  (*Id.* ¶ 4.)

14         All of B+S's offices, employees and records are in Europe.  In addition to its headquarters

15   in Frankfurt am Main (where it employs approximately 320 of its 504 employees), B+S has three

16   additional offices – in Hamburg and Bochum, Germany, and Braine l'Alleud, Belgium.  B+S also

17   has sales representatives in Berlin and Stuttgart, Germany, Amsterdam, the Netherlands, and

18   Vienna, Austria.  B+S has no offices, sales representatives or employees elsewhere.  It has never

19   had any office, sales representative or other employees anywhere in the U.S.  (*Id.* ¶ 5.)

20         B+S provides cashless payment solutions to its customers, which are approximately

21   215,000 merchants, *all located in Europe*, by offering a range of products and services designed

22   to facilitate the acceptance of credit and debit cards.  This action relates to B+S's role as a credit

23   ---

[1] The facts upon which this motion is based are set forth in the declaration of Michael Pip, Chief

24   Executive Officer of B+S, dated October 23, 2012 ("the **Pip Decl.**"), as well as allegations

25   contained in Stellia's Complaint ("**Compl.**") and the Agreement, which is annexed as Exhibit A
     to the Complaint.  Matters of German law relevant to this motion are addressed in the declaration

26   of Werner F. Ebke, dated November 19, 2012 (the "**Ebke Decl.**").

[2] B+S's owners are: (1) Deutscher Sparkassenverlag GmbH (incorporated in Stuttgart, Germany);

27   (2) Landesbank Berlin AG (Berlin, Germany); (3) Landesbank Baden-Württemberg (Stuttgart,
     Germany); (4) Bayern Card Services GmbH (Munich, Germany); and (5) Rheinischer

28   Sparkassen- und Giroverband (Düsseldorf, Germany).  (Pip Decl. ¶ 4.)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

card "acquirer" – *i.e.*, a financial institution that accepts the credit and debit card transactions of merchants with which it has a contractual relationship, processes (on behalf of those merchant-customers) payments from the cardholders' issuing banks through credit/debit card associations of which it is a member, and then distributes to its merchant-customers the payments it receives, less fees for B+S's services. B+S is a member of, among others, the Visa and MasterCard payment networks (collectively, the "**Associations**"), and interacts with these Associations exclusively through their European affiliates. (*Id.* ¶ 6.)

**B.      B+S Conducts No Business in Nevada or Elsewhere in the U.S.**

Each of B+S's Association licenses restricts B+S to serving merchants located in Europe, the Middle East, and/or Asia, including specifically the region referred to by Visa as the "**Territory**" and by MasterCard as the "**Europe Region.**" The reason for this is that the Associations do not offer global licenses to acquirers, but instead only license acquirers on a regional basis. Thus, all of B+S's Association licenses expressly exclude the U.S. (*Id.* ¶¶ 7-10.)

Accordingly, B+S does not and has never conducted business in the U.S. Among other things, B+S does not and has never: advertised any services of any kind anywhere in the U.S.; solicited, contracted for or done business with any U.S. merchants; appointed a registered agent for service of process in the U.S.; had any employees in the U.S.; had any agent of any kind anywhere in the U.S.; owned or leased any real property in the U.S.; had a mailing address or telephone listing in the U.S.; filed any lawsuit in the U.S.; or owed or paid any taxes to the U.S. or to any U.S. state. Nor has B+S ever been registered or licensed to do business in Nevada or any other U.S. state. (*Id.* ¶ 11.)

B+S's only contacts with the U.S. (none in Nevada – or anywhere within 2,300 miles of Las Vegas) are immaterial to this action or the facts on which it is based. *First*, B+S maintains a single trust account with a U.S. branch of a European bank which it uses exclusively to accept and hold in trust U.S. dollar merchant settlements received from Visa. That account exists solely because Visa does not transfer merchant payments made in U.S. dollars to accounts outside the U.S., and requires such payments to be made to a U.S. bank account. The funds in this account are property held in trust for merchants, rather than B+S's own funds. Moreover, the account is

1   "swept" daily: all funds on deposit are automatically transferred by the bank to B+S trust

2   accounts in Germany at the end of each business day.  (*Id.* ¶ 12.)

3        *Second*, B+S's Head of Risk and former Head of Sales each traveled to New York once

4   for business meetings – in 2009 and 2010, respectively.  These trips had nothing to do with any of

5   the matters set forth in the Complaint.  B+S's Head of Risk traveled to New York to meet with

6   MasterCard's Risk and Compliance Department from February 3-7, 2009.  B+S's former Head of

7   Sales traveled to New York to meet with a Dutch company called Payvision from October 13-16,

8   2010.  Aside from these two trips, no other B+S employees travel or have traveled to the United

9   States for business.  They do not travel to and have not travelled to Nevada on B+S business.  (*Id.*

10  ¶ 13.)

11       *Third*, B+S signed a non-disclosure agreement with a Florida entity called Direct

12  Solutions International, Ltd. ("**DSI**") in 2012 in connection with an offer DSI made to provide

13  B+S with services.  This agreement has nothing to do with Stellia or this action, is governed by

14  German law, and designates Frankfurt am Main as the exclusive forum for any disputes arising

15  thereunder.  Further, B+S and DSI discontinued communications shortly after executing the non-

16  disclosure agreement without ever engaging in any business together.  (*Id.* ¶ 14.)

17  **C.    Stellia Malta and Its Agreement With B+S**

18       Stellia Malta is a Maltese limited liability company with its principal place of business in

19  Balzan, Malta.  (Compl. ¶ 3.)  Stellia Malta acts as an intermediary, contracting with merchants to

20  provide acquirer services and then contracting with an acquirer such as B+S which actually

21  performs those services for Stellia Malta's merchants.  (Compl. ¶ 8; Pip Decl. ¶ 15.)  All of the

22  merchants which Stellia Malta referred to B+S are located in Europe.  (Pip Decl. ¶¶ 6-10, 15.)

23       In or about March 2010, B+S entered into a written agreement (the "**Agreement**") with

24  Stellia Malta whereby B+S agreed to provide certain services to Stellia Malta's European

25  merchants in connection with the acceptance and settlement of Visa and MasterCard transactions.

26  (Compl. Exh. A.)  All negotiations concerning the Agreement occurred outside the U.S.  (Pip

27  Decl. ¶ 16.)  B+S signed the Agreement in Frankfurt am Main, Germany, and Stellia Malta signed

28  the Agreement in Balzan, Malta, as recited on pages 1 and 6 of the Agreement.  (Compl. Exh. A.)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 4 -

1   The Agreement provides that it "shall be subject to the law of the Federal Republic of Germany"

2   and that the "[p]lace of jurisdiction" for disputes, "for both parties[,] will be Frankfurt am Main."

3   (Compl. Exh. A., Art. 12 p. 5.)  It also requires B+S to pay commissions to Stellia Malta by

4   wiring funds to a bank account in Malta.  (*Id.* Art. 5, pp. 3-4; Pip Decl. ¶ 16.)

5       According to the Complaint, Stellia Malta appears to have assigned certain of its claims

6   against B+S under the Agreement to Stellia Ltd., which is alleged to be a Nevada limited liability

7   company.  (Compl. ¶ 5.)   B+S has no relationship with and has never done any business with

8   Stellia Ltd.  (Pip Decl. ¶ 17.)   The Complaint, indeed, does not allege otherwise.

9   **D.     The Relevant Witnesses and Documents Are Located Almost Exclusively in
          Germany or Elsewhere in Europe**

10

11      Stellia's main allegations in this action are:

12          (i) Stellia Malta and B+S entered into the Agreement, pursuant to
13          which Stellia Malta referred to B+S certain merchants which then
            entered into separate written contracts directly with B+S as
14          "acquirer" (Compl. ¶¶ 15, 21);

15          (ii) in or around May 2011, B+S implemented a "new system for
            processing all transactions" (a "major platform migration") which
16          suffered from technological and/or operational problems, as a result
            of which B+S failed to provide accurate and/or timely chargeback[3]
17          notifications to certain merchants referred to B+S by Stellia Malta
            (*id.* ¶¶ 25-30);
18

19          (iii) B+S improperly terminated certain of those merchants for
            excessive chargebacks and "unilaterally stopped merchant
20          settlement on many accounts without forewarning" (*id.* ¶¶ 31, 32);

21          (iv) Stellia Malta's business suffered harm because of this conduct
            by B+S and "most of [its] merchant portfolio" was "decimated" (*id.*
22          ¶ 32);

23          (v) B+S has withheld commissions due to Stellia Malta under the
            Agreement (*id.* ¶ 35); and
24

25          (vi) B+S falsely represented in certain "promotional campaigns" to
            merchants and to intermediaries such as Stellia Malta that B+S "is a
26

27  [3] According to Stellia, a chargeback "typically" occurs when "a cardholder disputes that her or
    she authorized a particular transaction." (*Id.* ¶ 12.) Stellia also avers that "[a] chargeback is
28  presented on behalf of the cardholder's issuing bank to the acquiring bank," such as B+S.  (*Id.*)

- 5 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3881 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

highly competent acquirer with topnotch operating systems with the ability to timely report and manage chargebacks pursuant to Association Rules and in adherence to the standards of other top acquiring banks" (*id.* ¶ 43).

These allegations all concern acts involving European parties which took place, if anywhere, in Europe. The services B+S provided to its European merchant-customers were rendered in Europe (where B+S has its only presence); the "new system for processing all transactions" of which Stellia complains was housed in Germany and any operational difficulties could only have occurred there; any communications between B+S and its customer-merchants (including chargeback reports and termination notices) necessarily occurred in Europe; and any money B+S allegedly withheld from Stellia Malta would necessarily be held in a B+S bank account in Germany. Likewise, any "harm" Stellia Malta suffered necessarily occurred in Europe, where it, too, is based. (Pip Decl. ¶ 18.)

B+S, moreover, vigorously denies that any of its conduct was improper or caused Stellia any harm. To defend against Stellia's claims, B+S will rely on the testimony of current and former employees knowledgeable about those matters – including those familiar with B+S's technology and operations, members of B+S management, other employees familiar with chargeback issues concerning merchants referred by Stellia, and personnel who communicated with those merchants and with Stellia Malta. All of those witnesses are located in Europe; they are listed in the footnote below.[4]  B+S's defense will necessarily also rely on documents relating to B+S's operations and technology, as well as its communications and its dealings with Stellia Malta and with merchant-customers referred by Stellia Malta pursuant to the Agreement. All such documents are located in Europe. (*Id.* ¶¶ 19-21.)

B+S's defense is also likely to require documents and witnesses from Stellia Malta and non-parties. All, or nearly all, of these are to be found in Europe, where Stellia Malta and all of

---

[4] As stated in the Pip Declaration, these include B+S employees Ralf Petrausch, Bernd Tessmer, Juergen Herold, and Michaela Lachmann, external consultants Michael Schoeller and Jens Peter Schulz, and former B+S employee Daniel Hirst, all of whom are German citizens residing in Germany. (Pip. Decl. ¶ 20.)

1   B+S's merchants are located.  To B+S's knowledge, no witness or documentary evidence

2   relevant to this case is located in Nevada and the only witness located in the U.S. is Dominic

3   Tampone, a co-owner of Stellia Malta.  (*Id.* ¶ 22.)  He resides in New York.  (Compl. ¶ 3.)  Ken

4   Cassar, Stellia Malta's other co-owner and the person who signed the Agreement on its behalf,

5   resides in Malta.  (*Id.*)

### ARGUMENT

7        The Complaint *must* be dismissed because (1) this Court cannot exercise personal

8   jurisdiction over B+S and (2) Stellia Malta contractually waived the right to sue B+S anywhere

9   but in Frankfurt am Main.  In the alternative, it *should* be dismissed either under the doctrine of

10  *forum non conveniens* or because Stellia Malta's lone federal law claim is subject to Rule

11  12(b)(6) dismissal and supplemental jurisdiction over the remaining claims, governed by German

12  law, should be declined as provided by 28 U.S.C. § 1367(c)(3).  The Court, of course, need not

13  reach each of these bases for dismissing Stellia's complaint because "a federal court has leeway

14  'to choose among threshold grounds for denying audience to a case on the merits.'"  *Sinochem*

15  *Intern. Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citations omitted).  Thus,

16  the Court "may dismiss for lack of personal jurisdiction without first establishing subject-matter

17  jurisdiction," or "where subject-matter or personal jurisdiction is difficult to determine, and *forum*

18  *non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the

19  less burdensome course," because "there is no mandatory sequencing of . . . [jurisdictional]

20  issues."  *Id.* at 431-436 (citations omitted).

21  I.   **THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL**
        **JURISDICTION**
22

23       The Complaint must be dismissed because Stellia has not pleaded, and cannot

24  demonstrate, any basis for asserting personal jurisdiction over B+S.  "Where a defendant moves

25  to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of

26  demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374

27  F.3d 797, 800 (9th Cir. 2004) (citation omitted).  Although "uncontroverted allegations in the

28  complaint must be taken as true," where (as here) a defendant contradicts those allegations and

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

challenges jurisdiction, "the plaintiff cannot simply rest on the bare allegations of its complaint." *Id.* (internal citations omitted).  Further, where "a motion to dismiss is based on written materials," *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010), "for purposes of personal jurisdiction …[the Court] may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quotations and citation omitted) (affirming dismissal for lack of personal jurisdiction where defendant's affidavit contradicted the complaint's bare allegations).

The sole basis of personal jurisdiction alleged is Federal Rule of Civil Procedure 4(k)(2) (Compl. ¶ 6.):

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Rule 4(k)(2) would only justify personal jurisdiction here if Stellia could establish *each* of these elements: (1) Stellia has a claim arising under federal law, (2) no state court of general jurisdiction can exercise personal jurisdiction over B+S, and (3) "the federal court's exercise of personal jurisdiction must comport with due process." *Holland America Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (citation omitted).  Rule 4(k)(2) is a "narrow extension of federal reach" that "applies only if a claim is made against the defendant under federal law" and "does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country."  Fed. R. Civ. P. 4(k)(2), 1993 Amendments Advisory Comm. Note.  Such cases are rare.  Five years ago, the Ninth Circuit Court of Appeals observed that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule," *Holland America,*  485 F.3d at 462 (affirming grant of motion to dismiss), and that remains true today.

As demonstrated below, Rule 4(k)(2) does not remotely justify this Court's exercise of personal jurisdiction over Stellia because neither the first nor third requirement for application of that rule exists.  Taking them in reverse order: (a) exercising personal jurisdiction over B+S would violate the Due Process Clause and (b) Stellia has not pleaded a cognizable federal claim

- 8 -

1   as the only federal claim asserted in the Complaint (under the Lanham Act) must be dismissed

2   under Rule 12(b)(6).  Either deficiency mandates dismissal of the Complaint.

3   **A.      Exercising Personal Jurisdiction Over B+S Under Rule 4(k)(2) Would Violate Due Process**

4

5           The Ninth Circuit has held that "[t]he due process analysis under Rule 4(k)(2) is nearly

6   identical to traditional personal jurisdiction analysis with one significant difference: rather than

7   considering contacts between the . . . [defendant] and the forum state, we consider contacts with

8   the nation as a whole." *Holland America*, 485 F.3d at 461 (citing *Pebble Beach Co. v. Caddy*,

9   453 F.3d 1151, 1159 (9th Cir. 2006)).  The Due Process Clause therefore operates in the same

10  manner in the context of Rule 4(k)(2) as it would in any other personal jurisdiction context and

11  protects B+S's fundamental "liberty interest in not being subject to the binding judgments of a

12  forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Dow Chem.*

13  *Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) (citing *Burger King Corp. v. Rudzewicz*, 471

14  U.S. 462, 471-72 (1985) and *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)).  Although it is

15  not entirely clear from the Complaint whether Stellia is relying on a general or specific

16  jurisdiction theory, the result is the same under either analysis: exercising U.S. jurisdiction over

17  B+S in this case would violate the Due Process Clause.

18          **1.      Exercising General Jurisdiction Over B+S Would Violate Due Process**

19          Exercising "general or all-purpose jurisdiction" over a foreign defendant is

20  constitutionally permissible only where the defendant's "affiliations with the [forum] are so

21  'continuous and systematic' as to render them essentially at home in the forum …." *Goodyear*

22  *Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326

23  U.S. at 317).  As Justice Ginsburg explained for a unanimous court in *Goodyear Dunlop*, the

24  "paradigm" for a showing of general jurisdiction in the corporate context is the company's

25  domicile, place of incorporation and principal place of business. *Goodyear Dunlop,* 131 S. Ct. at

26  2853-54.  The plaintiff must show that defendant conducts "continuous corporate operations

27  within [the forum that are] so substantial and of such a nature as to justify suit against [defendant]

28  on causes of action arising from dealings entirely distinct from those activities." *Id.* at 2853

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   (internal quotations and citation omitted).  The defendant must "have contacts that approximate

2   physical presence in the forum." *Young v. Actions Semiconductor Co.*, 386 Fed. Appx. 623, 626

3   (9th Cir. 2010) (citation omitted).

4          No such contacts exist here.  B+S is domiciled and incorporated in Germany, where it

5   maintains its principal place of business.  It has neither a physical presence in the U.S. nor

6   anything approximating such a presence.  B+S plainly does not conduct corporate operations in

7   the U.S. at all, much less the kind of "continuous and systematic" contacts that would justify it

8   being sued on claims not arising out of contacts with the forum.  *See Young*, 386 Fed. App'x. at

9   626 (holding general jurisdiction impermissible where, as here, the defendant "is not incorporated

10  or registered to do business in [the forum], has never had any offices or other company facilities

11  in [the forum], has never employed any individuals in . . . [the forum], and has never appointed an

12  agent for service of process in the . . . [forum]" (citation omitted)); *Glencore Grain Rotterdam*

13  *B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002) (presence of an

14  independent sales agent and 16 shipments was insufficient to show that defendant "sat down and

15  made itself at home" in the forum so as to permit exercise of general jurisdiction).

16          **2.    Exercising Specific Jurisdiction Over B+S Would Violate Due Process**

17          The Due Process Clause also prohibits any exercise of specific jurisdiction over B+S in

18  this case.  Specific jurisdiction is "a more limited form of submission to a State's authority for

19  disputes that 'arise out of or are connected with the activities within the state.'"  *J. McIntyre*

20  *Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality opinion) (quoting *Int'l Shoe*, 326

21  U.S. at 319).  "For due process to be satisfied, a defendant, if not present in the forum, must have

22  'minimum contacts' with the forum state [*i.e.*, under Rule 4(k)(2), the U.S.] such that the

23  assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

24  *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe*, 326 U.S. at 315).  The exercise of specific

25  jurisdiction generally requires that the "defendant 'purposefully avails itself of the privilege of

26  conducting activities within the forum State, thus invoking the benefits and protections of its

27  laws.'"  *J. McIntyre*, 131 S. Ct. at 2787 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

28  "The question is whether a defendant has followed a course of conduct directed at the society or

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 10 -

economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct" in a manner consistent with "the individual's right to be subject only to lawful power." *J. McIntyre*, 131 S. Ct. at 2789 (citation omitted).

In order for this Court to exercise specific jurisdiction over B+S consistently with the Due Process Clause: (1) B+S must have "purposefully availed [itself] of the privileges of conducting activities in the forum", (2) the claims against it must arise out of or result "from the defendant's forum-related activities", and (3) the exercise of jurisdiction must be "reasonable." *Glencore*, 284 F.3d at 1123 (holding that a defendant should not be haled into court as a result of "random," "fortuitous," or "attenuated" contacts and that exercise of Rule 4(k)(2) jurisdiction would violate the Due Process Clause where the defendant's alleged U.S. connections consisted of making various shipments to San Francisco and the U.S. east coast). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *see also Pebble Beach*, 453 F.2d at 1155.

In support of its assertion of Rule 4(k)(2) "national long-arm" jurisdiction over B+S, Stellia makes certain conclusory allegations, which fail to satisfy *any* – much less, as required, all three – of these elements.[5]  Moreover, the facts set forth in the Pip Declaration negate any suggestion that the exercise of jurisdiction here would comport with due process.

        **a.**       **B+S Has Not Purposefully Availed Itself of the Privilege of Conducting Business Activity in the U.S.**

The "purposeful availment" requirement of *Hanson* can be satisfied either by showing "action taking place in the forum that invokes the benefits and protections of the laws in the forum," or "purposeful direction," for which "the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."

---

[5] As Plaintiff, Stellia "bears the burden of satisfying the first two prongs of the 'minimum contacts' test." *Pebble Beach*, 453 F.3d at 1155 (citing *Schwarzenegger*, 374 F.3d at 802).

- 11 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   *Pebble Beach*, 453 F.3d at 1155-56 (internal quotations and citation omitted).

2          Stellia's meager jurisdictional allegations and B+S's all but nonexistent contacts with the

3   U.S. fall well short of "purposeful availment."  Stellia alleges that B+S has "numerous

4   interactions with United States citizens who own, operate or manage companies with whom B+S

5   contracts and does business" (Compl. ¶ 6), but fails to identify any such companies other than

6   Stellia Malta – a Maltese company with one American co-owner.  Stellia also alleges generally

7   that some (unidentified) European merchants to which it promotes its services are "owned by

8   Americans," that B+S promotes its services to (unidentified) intermediary companies, such as

9   Stellia, "whose owners included United States citizens," and that such intermediary companies

10  are "based throughout the world including in the United States." (Compl. ¶ 42.)

11         These scant assertions do not suffice.  Stellia does not allege that B+S actually engaged in

12  *any* business in this country, much less the type of activity that would constitute "purposeful

13  availment."  *See Pebble Beach,* 453 F.3d at 1155 ("Evidence of availment is typically action

14  taking place in the forum ....").[6]  Nor does Stellia allege that B+S has committed any intentional

15  acts which were "expressly aimed at" the U.S. and caused harm, the "brunt of which" was

16  suffered in this country (and which B+S knew "was likely to be suffered" in the U.S.).  *See*

17  *Pebble Beach*, 453 F.3d at 1155-56 ("Evidence of direction generally consists of action taking

18  place outside the forum that is directed at the forum . . .such as distribution and advertising.").

19  Ninth Circuit precedent does not permit the exercise of specific jurisdiction on this flimsy basis.

20  *See, e.g., Holland Am.*, 485 F.3d at 461; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001)

21  (holding there was no purposeful availment even when the defendant entered into contracts with a

22  California plaintiff where it "entered into those contracts either by fax and telephone or via

23  meetings in Asia, France and Bermuda," the contracts designated foreign law, concerned an oil

24  pipeline in Burma and had "nothing to do" with the forum).

25

26  _____

   [6] Stellia's conclusory assertion that B+S has "contacts with the United States as a whole" (Compl.
27  ¶ 6) cannot sustain specific jurisdiction over B+S in the face of a detailed declaration of B+S's
    Chief Executive Officer establishing the lack of any significant U.S. contacts at all – and none
28  pertinent to this action. (*See* Pip Decl. ¶¶ 7-14.)

- 12 -

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Stellia's suggestion that a foreign corporation subjects itself to personal jurisdiction under Rule 4(k)(2)[7] merely by dealing with or promoting its services to foreign companies having U.S. ownership – outside of this country – is nonsense.  The Court of Appeals for the Ninth Circuit has held that even the provision of services *directly* to Americans overseas does not constitute action "expressly directed at the United States" and does not constitute "purposeful availment."  *See Pebble Beach*, 453 F.3d at 1159-60.  *A fortiori*, dealings abroad with foreign entities having some U.S. ownership is insufficient.  *See also Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302-03 (9th Cir. 1986) (unreasonable to exercise personal jurisdiction over European defendants based on the fact that they contracted with an American citizen); *Fraser v. Smith*, 594 F.3d 842, 849 (11th Cir. 2010) ("[T]he fact that . . . [defendant] provided services to American citizens" did not support Rule 4(k)(2) jurisdiction).

> **b.    Stellia's Claims Arise Solely Out of European – Not U.S. – Contacts**

But even if Stellia could satisfy the first "minimum contacts" requirement for assertion of specific jurisdiction, it cannot satisfy the second requirement – that its claims arise out of forum-related activities of B+S.  All of Stellia's claims arise out of B+S's alleged conduct in Germany, concerning European merchants.  There is no "nexus" whatsoever between B+S's sparse contacts with the U.S. (*see supra* at 6-7) and Stellia's claims.  Specific jurisdiction therefore cannot be exercised over B+S in this case.  *See Holland Am.*, 485 F.3d at 460 (specific jurisdiction under Rule 4(k)(2) constitutionally barred where the sole injury occurred overseas because plaintiff failed to show any "relationship between the forum and the claim").

> **c.    Exercising Personal Jurisdiction Over B+S Would be Manifestly Unreasonable**

Even if Stellia's failure (indeed, inability) to establish the first two elements of the "minimum contacts" analysis were overlooked, under no circumstances could it be considered

---

[7]  Stellia alleges that B+S does business abroad with Stellia Malta, a foreign company part-owned by an American, and promotes its services to other foreign companies owned in whole or in part by Americans. (Compl. ¶¶ 6, 42.)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    "reasonable" for a federal court in Nevada to exercise personal jurisdiction over B+S in this

2    action. Rigorous application of the "reasonableness" analysis under the Due Process Clause is

3    particularly important in cases, such as this one, involving only foreign defendants and foreign

4    conduct. "[G]reat care must be exercised when considering personal jurisdiction in the

5    international context," and both U.S. interests and those of the parties "will always be best served

6    by a careful inquiry into the reasonableness of the particular assertion of jurisdiction, and an

7    unwillingness to find an alien defendant's serious burdens outweighed where, as here, the

8    interests of the plaintiff and the forum State are minimal." *Asahi Metal Indus. Co. v. Super. Ct. of*

9    *Cal.*, 480 U.S. 102, 103 (1987) (citation omitted); *see also Yahoo! Inc. v. La Ligue Contre le*

10   *Racisme et L'Antisemitisme*, 379 F.3d 1120, 1137 (9th Cir. 2004) ("[l]itigation against an alien

11   defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state

12   because important sovereignty concerns exist.") (quotations and citations omitted).

13           In this Circuit, courts "assess the reasonableness of exercising jurisdiction" under the Due

14   Process Clause by reference to the following factors: "(1) the extent of a defendant's purposeful

15   interjection into the forum state's affairs; (2) the burden on the defendant of defending in the

16   forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum

17   state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

18   controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective

19   relief; and (7) the existence of an alternative forum." *Glencore Grain Rotterdam B.V.,* 284 F.3d

20   at 1125 (citation omitted).   None of these factors favors the exercise of personal jurisdiction over

21   B+S.

22           To the contrary, the Pip Declaration establishes that B+S engages in no "purposeful

23   interjection" into U.S. and that it would be burdensome for B+S, a German entity without a U.S.

24   presence, to defend this European-centered action in Nevada, particularly as all of its witnesses

25   and documents are located in Germany. (Pip Decl. ¶¶ 2-22.)  The Ebke Declaration and the

26   Agreement further establish that Germany provides a forum that can efficiently resolve this

27   dispute – indeed, the one selected by the parties – and that adjudicating this action in Nevada

28   would conflict with German sovereignty and Germany's interest in regulating B+S and enforcing

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 14 -

the Agreement's German choice of law and forum selection clauses. (Ebke Decl. ¶¶ 8-30;

Agreement (Compl. Exh. A, Art. 12, p. 5).) Indeed, Germany is the "most efficient forum" – both

because it is where most, if not all, of the relevant conduct occurred and where the evidence is

located, *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985), and

because a German court can utilize procedures under European regulations for obtaining evidence

from non-parties in other European countries (such as B+S's merchants and former employees)

which are far more efficient than the Hague Evidence Convention procedures available in this

Court. (Ebke Decl. ¶¶ 50-54.)[8] Further, in light of its contractual waiver of any venue other than

Frankfurt am Main (*see* Point II below), Stellia cannot be heard to claim that it has any legitimate

interest in litigating in Nevada. Exercising personal jurisdiction over B+S would therefore be

manifestly unreasonable and a violation of B+S's due process rights. The Complaint must be

dismissed. *See, e.g., Pac. Atl. Trading.,* 758 F.2d at 1330-31 (reversing and vacating default

judgment for lack of personal jurisdiction; exercise of such jurisdiction was "unreasonable"

where Malaysian third-party defendants did not maintain "offices, employees, agents, or

property" in the forum and "did not interject any products or services into" the forum).

### B.   Stellia Has No Cognizable Federal Claim Against B+S as Its Lanham Act Claim Must Be Dismissed Under Rule 12(b)(6)

Even if exercising U.S. jurisdiction over B+S did not violate the Due Process Clause,

which it plainly does, Rule 4(k)(2) "long arm" jurisdiction would still be lacking because Stellia

---

[8] European Council Regulation (EC) No 1206/2001 (titled "on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters") creates a streamlined procedure for obtaining such evidence, as detailed in the Ebke Declaration. In *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009), the court affirmed a *forum non conveniens* dismissal so that litigation could proceed instead in European courts, in part because of the superior availability of compulsory process in Europe: "the Hague Convention's letters rogatory process, which would be necessary to produce proof for an American trial, is more cumbersome than European Commission Regulations for taking evidence within Europe". 586 F.3d at 696; *see also In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 844 n.8 (N.D. Cal. 2010) (dismissing claims for *forum non conveniens*; "France is also the location of significant amounts of relevant damages evidence, and it will likely be easier in France to obtain damages evidence from the other Europeans in these lawsuits. *See* European Council Regulation 1206/2001" (citation omitted)).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

1  has no cognizable federal law claim against B+S.  Stellia's sole purported federal claim – for

2  "false advertising" under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) – is facially

3  deficient and cannot survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which "mandates

4  that a court dismiss a cause of action that fails to state a claim upon which relief can be granted."

5  *Ybarra v. Ocwen Loan Servicing, LLC*, No. 2:10–cv–01642-GMN-LRL, 2011 WL 6002926, at

6  *1-2 (D. Nev. Nov. 30, 2011) (Navarro, J.) (citations omitted).

7  In three separate ways, any single one of which would require dismissal, Stellia's effort to

8  bootstrap a (German) breach of contract action into a Lanham Act claim fails as a matter of law

9  and should be dismissed:  *First*, Stellia has not pleaded the elements of a Lanham Act claim;

10  *second*, the Lanham Act does not apply to the exclusively foreign acts of which Stellia Malta

11  complains, particularly in the absence of any injury to an American plaintiff; and *third*, the "false

12  statements" Stellia Malta cites are at most non-actionable "puffery".

**1.    Stellia Malta Has Not Alleged the Elements of a Lanham Act Claim**

13  Section 43(a) "is one of the few provisions [of the Lanham Act] that goes beyond

14  trademark protection, . . . [but it] does not have boundless application as a remedy for unfair trade

15  practices … [and] can never be a federal codification of the overall law of unfair competition …."

16  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (quotations and

17  citations omitted).  To state a claim under this section, a plaintiff must show that "(1) the

18  defendant made a false statement either about the plaintiff's or its own product; (2) the statement

19  was made in commercial advertisement or promotion; (3) the statement actually deceived or had

20  the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the

21  defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or

22  is likely to be injured as a result of the false statement, either by direct diversion of sales from

23  itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."

24  *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citation omitted).

25  In addition, at least where (as here) a Section 43(a) "false advertising" claim "sounds in fraud",

26  the plaintiff should be held to "meet the heightened pleading requirements of Rule 9(b)" by

27  showing "the who, what, when, where, and how" of the conduct alleged.  *TransFresh Corp. v.*

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 16 -

*Ganzerla & Assoc., Inc.*, No. C–11–06348-JCS, 2012 WL 994674, at *6 (N.D. Cal. Mar. 23, 2012) (citations omitted); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, No. CV 11–01056-PHX-NVW, 2011 WL 6296833, at *4-5 (D. Ariz. Dec. 16, 2011); *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11–2118 PSG (SHx), 2011 WL 4802372 at *4 (C.D. Cal. Oct. 11, 2011) ("[b]ecause Plaintiff's false advertising claim is based on allegations of false and misleading statements, it is rooted in fraud and it must therefore be pleaded with particularity").[9]

Stellia Malta offers nothing but conclusory allegations as to the first and most fundamental element. As to "false statements," Stellia Malta alleges merely that "[i]n its promotional campaigns, B+S has represented (and, on information and belief, represented in writing) that it is a highly competent acquirer with topnotch operating systems with the ability to timely report and manage chargebacks . . . ." (Compl. ¶ 43.)  Although Stellia Malta claims these were "intentional misrepresentations" and "promotional lies," which were, together with B+S's other alleged conduct, "intentional, malicious, oppressive, and fraudulent . . . ." (Compl. ¶ 74), Stellia Malta leaves B+S and this Court to guess about when, where, or to whom B+S allegedly made the above statements and therefore fails to satisfy even the general notice pleading requirement of Rule 8, much less the particularity requirements of Rule 9(b).  Accordingly, Stellia Malta's Lanham Act must be dismissed. *See TransFresh Corp.*, 2012 WL 994674, at *6-8 (dismissing "false advertising" claims under the Lanham Act that did not meet the Rule 9(b) pleading requirements); *ThermoLife Int'l*, 2011 WL 6296833, at *4-5 (same); *RPost Holdings, Inc.*, 2011 WL 4802372, at *3-4  (same).

Stellia Malta does not plead at all – much less with the particularity required by Rule 9(b) – the next four Lanham Act elements. Ignoring entirely the second element – that false statements were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or

---

[9] No Circuit Court of Appeals has yet decided this issue. *See RA Med. Sys.. Inc. v. PhotoMedex*, 373 Fed. Appx. 784, 787 n.3 (9th Cir. 2010) (declining to address the question because it had not been raised in the District Court). While most district judges in this Circuit have found Rule 9(b) applicable to false advertising claims under the Lanham Act, a minority have not. *See, e.g.*, *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. C 06-7541 PJH, 2007 WL 2288329, at *9 (N.D. Cal. Aug. 9, 2007).

'promotion' within that industry," *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) –

Stellia Malta does not even identify the persons to whom B+S supposedly made the alleged

statements.  And the Complaint is silent as well on the next three elements – that the statements

"actually deceived or had the tendency to deceive a substantial segment of its audience," were

materially deceptive, and that B+S caused those statements to enter interstate commerce.  In sum,

Stellia Malta has failed to plead a Lanham Act claim.

> **2.      The Lanham Act Does Not Apply to B+S's Purely Foreign Conduct**

Stellia Malta's Lanham Act claim must also be dismissed for the independent reason that

the Complaint is devoid of allegations that can support extraterritorial application of the Lanham

Act to B+S's European activities.  "[T]he Lanham Act's coverage of foreign activities may be

analyzed under the test for extraterritorial application of the federal antitrust laws set forth in

*Timberlane Lumber Co. v. Bank of Am. National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir.

1976) (Timberlane I), . . . [which] held: first, there must be some effect on American foreign

commerce; second, the effect must be sufficiently great to present a cognizable injury to plaintiffs

under the federal statute; and third, the interests of and links to American foreign commerce must

be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial

authority."  *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985)

(citation omitted).[10]

All three factors militate against extraterritorial application of the Lanham Act here.  The

first two factors may apply even where the conduct at issue occurred abroad, but *only* where

"'there is monetary injury in the United States' to an American plaintiff."  *Love*, 611 F.3d at 613

---

[10] In *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010), the Supreme Court
reaffirmed the "longstanding principle of American law that legislation of Congress, unless a
contrary intent appears, is meant to apply only within the territorial jurisdiction of the United
States." (citation omitted).  In *Morrison*, the Court did not limit its holding to claims under the
Securities and Exchange Act but instead held that the presumption against extraterritoriality
applies "in all cases."  *Id.* at 2881.  Nevertheless, in *Love*, 611 F.3d at 613 n.6, the Ninth Circuit
declined "to revisit . . . [its] case law regarding the extraterritorial application of the Lanham
Act."  Although this Court therefore remains bound by the *Timberlane I* test, B+S preserves for
any appeal the point that notwithstanding *Love*, *Morrison* supplants that test and precludes *any*
extraterritorial application of the Lanham Act.

- 18 -

1   (citation omitted) (dismissing Lanham Act claims for this reason).  Stellia Malta, however, does

2   not allege any facts showing how B+S's alleged statements about its products and services,

3   offered solely to customers outside the U.S., affected U.S. commerce at all – much less that they

4   caused injury to an American plaintiff.[11]  In any event, no such allegation could survive a motion

5   to dismiss, as Stellia Malta could not *plausibly* plead, as required, that a U.S. plaintiff suffered

6   monetary injury as a result of B+S's alleged foreign "false advertising."  *See Ashcroft v. Iqbal*,

7   556 U.S. 662, 678 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

8          Nor does the third factor – strong links to U.S. foreign commerce relative to that of other

9   nations and a strong U.S. interest in that commerce – apply.  The U.S. has no particular interest in

10  B+S's business dealings with other European companies, subject to contracts governed by the

11  laws of European countries.  By contrast, the European countries in which B+S operates –

12  including Germany, whose financial services regulatory authority regulates B+S – self-evidently

13  have a far stronger interest in such commerce and have their own laws regulating the conduct of

14  which Stellia complains.  (*See* Ebke Decl. ¶¶ 8-12, 75-90.)  The matters considered in the Ninth

15  Circuit to evaluate this factor[12] all strongly counsel against extraterritorial application: Applying a

16  U.S. statute to the European conduct of a regulated German financial institution dealing with

17  other European entities runs a serious risk of violating the policies and national interests of

18  Germany.  (Ebke Decl. ¶¶ 8-30.)  Moreover, the locations and principal places of business of all

19  relevant parties here are all in Europe, not the U.S., and any effects of B+S's conduct in Europe

20

21  ───────────────

    [11] Although Stellia Ltd. is a U.S. plaintiff, it is not a party to the Lanham Act claim, which is

22  brought solely by Stellia Malta.  Stellia Ltd., moreover, was not a party to the Agreement and
    B+S is not even alleged to have had anything to do with it.  (*See also* Pip Decl. ¶ 17 (confirming

23  that B+S did not deal with Stellia Ltd.)).

24  [12] These are: "the degree of conflict with foreign law or policy, the nationality or allegiance of the
    parties and the locations or principal places of business of corporations, the extent to which

25  enforcement by either state can be expected to achieve compliance, the relative significance of
    effects on the United States as compared with those elsewhere, the extent to which there is

26  explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the
    relative importance to the violations charged of conduct within the United States as compared

27  with conduct abroad."  *Star-Kist Foods, Inc.*, 769 F.2d at 1395 (*quoting Timberlane I*, 549 F.2d at

28  614).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

on Stellia Malta are felt there, not here.[13] Extraterritorial application of the Lanham Act in this case would therefore be inappropriate. *See, e.g., Love*, 611 F.3d at 612-13 (the "Lanham Act cannot be applied extraterritorially to encompass acts committed in Great Britain" where plaintiff "failed to present any evidence that the alleged Lanham Act violations affected United States commerce in any way," "all relevant acts occurred abroad" and plaintiff could not show "that the complained of actions caused him monetary injury in the United States.").

### 3.  The Alleged Statements are Non-Actionable "Puffery"

Even if Stellia Malta could otherwise maintain a Lanham Act claim against B+S, the statements that B+S allegedly made are, as a matter of law, non-actionable "puffery" – *i.e.*, "'claims [which] are either vague or highly subjective.'" *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (citation omitted) (affirming dismissal of Lanham Act claim on Rule 12(b)(6) motion). It is settled that "puffing immunizes an advertisement from liability under the Lanham Act," *id.*, and that "the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc.*, 513 F.3d at 1053 (affirming dismissal of puffery claims on 12(b)(6) motion).

The assertions which Stellia Malta attributes to B+S, that it is "highly competent" and has "topnotch operating systems" epitomize non-actionable "puffery." *See id.* (affirming dismissal of Lanham Act claims based on statements that defendant "would deliver 'flexibility' in their 'cost-per-copy' contracts and that they would lower copying costs for consumers" on defendant's motion to dismiss as non-actionable "puffery"); *Cook,* 911 F.2d at 246 (holding the statement "we're the low cost commercial collection experts" to be non-actionable "puffery"; affirming dismissal of false advertising claims under the Lanham Act on defendant's motion to dismiss and denial of plaintiff's motion for leave to amend its complaint on futility grounds); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing Lanham Act claim

---

[13] *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 n.2 (9th Cir. 1998) ("the brunt of the harm suffered by . . . [a business entity as plaintiff] was in the state where it maintained its principal place of business . . . .").

- 20 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   because the statements "'higher performance,' 'longer battery life,' 'richer multimedia

2   experience,' 'faster access to data' . . . [were] all non-actionable 'puffery'").

3         Stellia Malta's failure to state a Lanham Act claim compels a finding that federal long-

4   arm jurisdiction under Rule 4(k)(2) is unavailable in this case, as the rule applies only when a

5   plaintiff has a "claim that arises under federal law." *See Tamburo v. Dworkin*, 601 F.3d 693, 699-

6   701 n.6 (7th Cir. 2010) (dismissing plaintiff's antitrust claims under Rule 12(b)(6) as legally

7   deficient and "pleaded in a wholly conclusory fashion"; such dismissal rendered Rule 4(k)(2)

8   jurisdiction unavailable).  Absent any basis for this Court to exercise personal jurisdiction over

9   B+S, the entire Complaint must be dismissed.

10  **II.    THE COMPLAINT MUST BE DISMISSED BECAUSE THE AGREEMENT BARS**

11  **STELLIA MALTA FROM SUING B+S IN THIS COURT**

12        In the alternative, the Complaint must be dismissed because in the parties' Agreement,

13  Stellia Malta waived the right to assert jurisdiction or lay venue anywhere but Frankfurt am Main,

14  Germany.  Stellia attaches to its Complaint the Agreement upon which several of its claims are

15  based, but conveniently ignores Article 12, which provides: "This agreement shall be subject to

16  the law of the Federal Republic of Germany.  Place of jurisdiction for both parties will be

17  Frankfurt am Main." (Compl. Exh. A., Art. 12.)[14]

18        In this Circuit, "[f]orum selection clauses are *prima facie* valid, and are enforceable absent

19  a strong showing by the party opposing the clause 'that enforcement would be unreasonable or

20  unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-*

21  *Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 514 (9th Cir. 1988) (citations omitted); *see also*

22  *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 811 F.2d 1265, 1270 (9th Cir. 1987) ("[C]hoice-of-law

23  and choice-of-forum provisions in international commercial contracts are 'an almost

24

25  [14] On any motion to dismiss, a court may consider "exhibits attached to the complaint." *Swartz v.*
    *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Moreover, because "[a] motion to enforce a
26  forum-selection clause is treated as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3)
    . . . the pleadings need not be accepted as true, and facts outside the pleadings properly may be
27  considered." *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir.
    2005) (citations omitted).
28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   indispensable precondition to achievement of the orderliness and predictability essential to any

2   international business transaction,' and should be enforced absent strong reasons to set them

3   aside.") (citations omitted).

4         To escape the Agreement it made, Stellia would have to "show that trial in the contractual

5   forum would be so gravely difficult and inconvenient that . . . [it] will for all practical purposes be

6   deprived of . . . [its] day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

7   Far from making the requisite "strong showing," *id.* at 15, Stellia pleads no facts negating its

8   contractual consent to Frankfurt am Main's courts as the forum.  The Pip and Ebke declarations,

9   by contrast, show that Frankfurt am Main was the venue to which Stellia Malta, a sophisticated

10  business entity, agreed in the context of a negotiated commercial agreement; that Frankfurt was

11  reasonably selected as it is B+S's principal place of business and is a major commercial and

12  financial center in Europe; and that Frankfurt am Main's courts unquestionably provide a fair

13  forum.  The Agreement's forum selection clause should therefore be enforced.  (Pip Decl. ¶ 16;

14  Ebke Decl. ¶¶ 31-61.)

15        The forum selection clause of the Agreement requires dismissal of the entire Complaint –

16  including Stellia Malta's Lanham Act claim as well as both Plaintiffs'[15] non-federal claims,

17  which are governed by German law.[16]  It is well settled that "forum selection clauses can be

18  [15] It is of no moment that Stellia Malta (B+S's counterparty under the Agreement) allegedly

19  assigned certain of its rights under the Agreement to Stellia Ltd; that entity is fully bound by the
    Agreement's forum selection and governing law clauses  because an assignee is "entitled to no

20  more right, title or interest than held by its assignor." *CIM Int'l v. United States*, 641 F.2d 671,
    674 (9th Cir. 1980).  *See also LNV Corp. v. STK Fin., LLC*, No. C 11–00025 SBA, 2011 WL

21  4345193 (N.D. Cal. Sept. 14, 2011) (enforcing forum selection clause against contract assignee).

22  [16] The Agreement itself is governed by German law (Compl. Exh. A, Art. 12), and "where the
    parties specify in their contractual agreement which law will apply, . . . [federal] courts will

23  generally give effect to that choice." *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1296-97
    (9th Cir. 1997) (citation omitted).  This provision applies not only to the contract claims but also

24  Plaintiffs' other claims. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1087 n.1 (9th Cir. 2009).
    Moreover, German law would apply to Stellia's claims even without the Agreement's governing

25  law clause because Germany plainly has the "greater interest" in this dispute under federal law.
    Federal conflict-of-law rules look to the following factors in determining a jurisdiction's interest

26  in a contract dispute: "(a) the place of contracting; (b) the place of negotiation of the contract; (c)
    the place of performance; (d) the location of the subject matter of the contract; and (e) the

27  domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.*

28  (citation omitted). Similarly, federal law determines tort claims under the law of the jurisdiction

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    equally applicable to contractual and tort causes of action," and that where, as here, the tort

2    claims "relate to 'the central conflict over the interpretation' of the contract, they are within the

3    scope of the forum selection clause." *Manetti-Farrow, Inc.*, 858 F.2d at 514 (citation omitted)

4    (affirming dismissal of contract and tort claims, including claim for unfair trade practices, under

5    contractual clause designating Florence, Italy as forum because the asserted claims "relate[] in

6    some way to rights and duties enumerated in the exclusive dealership contract."). This is true

7    even though the statutory claim Stellia Malta asserts arises under a federal statute and would not

8    be available in the contractually specified forum. *See, e.g., Richards v. Lloyd's of London*, 135

9    F.3d 1289, 1295 (9th Cir. 1998) (en banc) (affirming dismissal in light of a forum selection clause

10    specifying England as the venue for litigation, even though plaintiffs' statutory claims, asserted

11    under federal and state securities laws and RICO, would not be available under British law).

12         The forum selection clause at issue here was, moreover, mandatory and not merely

13    permissive. The Agreement plainly states that "jurisdiction for both parties *will be* Frankfurt am

14    Main" and thereby makes Germany the exclusive forum for Stellia's claims. (Compl. Exh. A,

15    Art. 12 (emphasis added).) As German law governs the Agreement (*id.*), the effect of this

16    wording is a question of German law. The Ebke Declaration demonstrates that, under German

17    law, clauses providing that a particular forum "shall" or "will" be the place to adjudicate the

18    parties' disputes confer exclusive jurisdiction on the designated forum and are enforced. (*See*

19    Ebke Decl. ¶¶ 21-27.) This result is consistent with U.S. law, which treats such clauses as

20    "mandatory".[17] For all these reasons, Stellia's effort to avoid the bargain it struck in the

21    _____

22    with the "most significant relationship," which is determined by: (1) the place where the injury
     occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence,
23    nationality, place of incorporation and place of business of the parties; and (4) the place where the
     relationship, if any, between the parties is centered. Restatement (Second) Conflict of Laws §
24    145. Here, each of these factors favors application of German law; none favor application of
     Nevada law.

25    [17] *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) (clause stating
26    "[v]enue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia"
     made Virginia the mandatory forum); *Prof'l Courier & Logistics, Inc. v. NICA, Inc.*, No. 2:12–
27    cv–00054, 2012 WL 1120675, at *1 (E.D. Cal. Apr. 3, 2012) (clause stating "the parties agree to
     litigate in the state courts of Massachusetts" was mandatory); *CH2O, Inc. v. Bernier*, No. C11–
28    5153RJB, 2011 WL 1485604, at *1, 4 (W.D. Wash. Apr. 18, 2011) (clause stating "jurisdiction of

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   Agreement is unavailing.  This litigation must proceed, if anywhere, only in Frankfurt am Main.

2   **III.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF**
    **_FORUM NON CONVENIENS_**

3

4        In the alternative, Stellia's claims should be dismissed under the doctrine of *forum non*

5   *conveniens.* "The party moving for forum non conveniens dismissal must demonstrate two things:

6   (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and

7   public interest factors favor dismissal." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d

8   696, 699 (9th Cir. 1995) (citation omitted).   Both factors are amply established here.

9        "A foreign forum must only provide the plaintiff with 'some' remedy in order for the

10  alternative forum to be adequate," *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d

11  656, 666 (9th Cir. 2009) (citation omitted), and adequacy is generally established where

12  "defendant is amenable to process in the foreign jurisdiction." *Moreno v. Omnilife USA, Inc.*, No.

13  09–55672, 2012 WL 1893546, at *1 (9th Cir. May 25, 2012).  This factor is easily satisfied as

14  B+S is plainly subject to suit in Germany, its home country (and the exclusive forum designated

15  in the parties' Agreement).  Our courts have consistently held that the courts of Germany provide

16  a fair and adequate forum. *See Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 868

17  (9th Cir. 2003) ("Germany provides an adequate forum for resolving disputes"); *Facebook, Inc. v.*

18  *Studivz Ltd.*, No. C 08–3468 JF(HRL), 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009)

19  ("Germany clearly is an adequate forum").  Stellia Malta's inclusion of a Lanham Act claim does

20  not change this result, for it is well-settled that "the presence of a Lanham Act claim does not

21  preclude forum non conveniens dismissal." *Lockman Found. v. Evangelical Alliance Mission*,

22  930 F.2d 764, 768-9 (9th Cir. 1991) (citation omitted) (holding that "[e]ven if the RICO and

23  _____

24  such claims shall be in the courts of the state of Washington" was mandatory); *Holck v. Bank of
    N.Y. Mellon Corp.*, 769 F. Supp. 2d 1240, 1254 (D. Hawaii 2011) (clause stating "the dispute

25  will be adjudicated in a court of competent civil jurisdiction sitting in the State whose law
    governs the terms of th[e] [a]greement" was mandatory) (citation omitted); *Vogt-Nem, Inc. v. M/V*

26  *Tramper*, 263 F. Supp. 2d 1226, 1231 (N.D. Cal. 2002) (finding clause stating that disputes "will

27  be submitted to the competent court in Rotterdam" was mandatory and holding that the term
    "will" had the same effect of making a clause mandatory as the terms "shall" or "must" or "only"

28  or "exclusively")" (citation omitted).

- 24 -

1  Lanham Act claims were unavailable in Japan, that would not furnish a sufficient reason to

2  preclude dismissal.")

3       As to the private and public interest factors, this is the unusual case in which *every* factor

4  favors *forum non conveniens* dismissal or is neutral; none favors retaining this action in Nevada.[18]

5  *First*, all of the evidence, witnesses, and other sources of proof in this case are located thousands

6  of miles from Nevada; all B+S employees and documents, as well as the evidence from Stellia

7  and non-parties are to be found in Germany or elsewhere in Europe, where all conduct relevant to

8  this lawsuit took place. (*See supra* at 2). *Second*, this Court lacks compulsory process to require

9  the testimony to be taken of non-party witnesses located in Germany or other European countries,

10  but a German court has such power under European regulation that has been recognized by the

11  Ninth Circuit as providing a more efficient means of procuring evidence than the Hague

12  Convention. (*See* Ebke Decl. ¶¶ 50-54; *see also supra* at 15).  While the third factor – the

13  possibility of viewing the subject premises – is neutral because there are no subject premises in

14  this case, the fourth factor – rendering trial of the case expeditious and inexpensive – also

15  strongly favors dismissal because all of the documents and witnesses are thousands of miles from

16  this forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981) ("[f]inding that trial in the

17  plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on

18  grounds of forum non conveniens." (footnote omitted)); *Vivendi SA v. T-Mobile USA Inc.*, 586

19  F.3d 689, 696 (9th Cir. 2009) (affirming forum non conveniens dismissal concerning, as here, a

20  fundamentally European dispute where "[f]ive of the seven parties . . . most of the relevant

21  documentary evidence" and the vast majority of witnesses were in Europe); *Creative Tech.*, 61

22

23  [18] The relevant "private interest" factors, derived from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), include: "(1) relative ease of access to sources of proof; (2) the availability of

24  compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial

25  of the case expeditious and inexpensive." *Creative Tech.*, 61 F.3d at 703 (citation omitted).  The public interest factors include: "(1) administrative difficulties flowing from court congestion; (2)

26  imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a

27  diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of

28  unnecessary problems in conflicts of law."  *Id.* at 703-704.

- 25 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   F.3d at 703 (affirming dismissal where "all of the records and the majority of witnesses involved"

2   were located outside the forum.").

3        The public interest factors also overwhelmingly favor dismissal of this action. *First*, as to

4   court congestion, "[l]ike many of our district courts, this Court's docket is more than full."

5   *Provincial Gov't v. Placer Dome, Inc.*, No. 2:05-CV-01299, 2008 WL 6915277, at *22 (D. Nev.

6   Jan. 16, 2008), *rev'd in part on other grounds*, 582 F.3d 1083 (9th Cir. 2009). *Second*, it would

7   be a waste of time to burden a Nevada jury with considering an entirely foreign action such as

8   this. *See Loya*, 583 F.3d at 665 ("no cause to burden Washington jurors with this litigation given

9   that most of the allegedly wrongful conduct took place in Mexico and among non-Washington

10  defendants."); *Vivendi*, 586 F.3d at 696 (same). *Third*, the interest in having local controversies

11  decided at home favors dismissal in favor of Germany because Germany is where B+S is

12  domiciled, the events in question took place, and where the plaintiff agreed to litigate all disputes.

13  *Fourth*, the interest in having a forum familiar with applicable law strongly favors Germany

14  because German law governs the parties' dispute under the clear language of the parties' choice-

15  of-law clause, as well as under federal common law principles which govern conflict-of-law

16  analysis in a case where subject matter jurisdiction was premised on a federal question. *See Piper*

17  *Aircraft*, 454 U.S. at 260 (footnote omitted) ("the need to apply foreign law favors dismissal");

18  *Vivendi*, 586 F.3d at 696 (same); *Loya*, 583 F.3d at 665 (same). *Fifth*, dismissal will avoid

19  unnecessary conflict of laws problems and allow the parties' chosen forum to determine their

20  rights based on the law they selected in the Agreement. Germany has a strong interest in this case

21  because it concerns the conduct of a German company, which is regulated by the German

22  financial services regulator BaFin (*see supra* at 2), and arises under contract designating the

23  application of German law and a German forum. *See id.* (noting "Mexico's substantial interest in

24  holding businesses operating in Mexico accountable"); *Creative Tech.*, 61 F.3d at 704 (where

25  lawsuit was "essentially a dispute between two Singapore corporations . . . the United States'

26  interest in resolving this controversy and the relation of the jury community to this controversy

27  are extremely attenuated and do not sway the balance against dismissal" and further holding that

28  "[t]he presence of . . . a wholly-owned subsidiary of a Singapore corporation, influences our

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    analysis very little.").

2    Because both the private and public interest factors in this case overwhelmingly favor

3    dismissal, this Court should dismiss this action under the doctrine of *forum non conveniens*.

4    **IV.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL**
       **JURISDICTION OVER PLAINTIFFS' OTHER – GERMAN LAW – CLAIMS**

5

6    If the Court does not dismiss the Complaint on any of the grounds set forth above, it

7    should nevertheless dismiss the First Claim (which fails to state a Lanham Act claim, *see supra* at

8    15-21) pursuant to Fed. R. Civ. P. 12(b)(6) and then decline to exercise supplemental jurisdiction

9    over the remaining claims. As demonstrated at pages 15-21 *,supra*, Stellia Malta's Lanham Act

10   claim is meritless and must be dismissed. Where a District Court "has dismissed all claims over

11   which it has original jurisdiction", it is authorized to "decline to exercise supplemental

12   jurisdiction." 28 U.S.C. § 1367(c)(3). Because the non-federal claims here all arise under

13   German law (*see supra* at 7) and have no connection with the U.S., much less Nevada, those

14   claims should all be dismissed. *See Avelar v. Youth & Family Enrichment Servs.*, 364 Fed. Appx.

15   358, 359 (9th Cir. 2010) ("We have frequently recognized that when federal claims are dismissed

16   before trial, supplemental state claims should ordinarily also be dismissed." (citations omitted)).

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 27 -

1

## CONCLUSION

2         For the foregoing reasons and those set forth in the Pip and Ebke Declarations, this Court

3 should dismiss Stellia's Complaint in its entirety and with prejudice, together with costs,

4 attorneys' fees, and such other relief as this Court deems appropriate.

5         DATED:  November 20, 2012.

6                                                    SNELL & WILMER L.L.P.

7

8                                                    _____
                                                     MARC J. GOTTRIDGE, ESQ.
9                                                    *(Pro Hac Vice Submitted on 11/20/12)*
                                                     DAVID R. MICHAELI, ESQ.
10                                                   *(Pro Hac Vice Submitted on 11/20/12)*
                                                     HOGAN LOVELLS US LLP
11                                                   875 Third Avenue
                                                     New York, NY 10022
12
                                                     D. NEAL TOMLINSON, ESQ.
13                                                   Nevada Bar No. 6851
                                                     KELLY H. DOVE, ESQ.
14                                                   Nevada Bar No. 10569
                                                     SNELL & WILMER L.L.P.
15                                                   3883 Howard Hughes Parkway, Suite 1100
                                                     Las Vegas, NV  89169
16

17                                                   *Attorneys for Defendant B+S Card Service GmbH*

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am employed in Clark County, where this mailing occurs. My business address is 3883 Howard Hughes Parkway, Suite 1100, Las Vegas, Nevada 89169. I am over the age of 18 years and not a party to, nor interested in, this action. On November 20, 2012, I caused to be served a true and correct copy of the foregoing **MOTION TO DISMISS THE COMPLAINT** by the method indicated:

☐    **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. pursuant to EDCR Rule 7.26(a). A printed transmission record is attached to the file copy of this document(s).

☒    **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

☐    **BY EMAIL:** by emailing a PDF of the document(s) listed above to the email addresses of the individual(s) listed below.

☒    **BY ELECTRONIC SUBMISSION:** submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case.

| | |
|---|---|
| Amanda J. Cowley, Esq. | David P. Steiner, Esq. |
| FENNEMORE CRAIG JONES VARGAS | DAVID STEINER & ASSOCIATES, PLC |
| 3773 Howard Hughes Parkway | 1875 Century Park East |
| Third Floor South | Suite 2230 |
| Las Vegas, NV 89169 | Los Angeles, CA 90067 |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |

An employee of Snell & Wilmer L.L.P.

16175027.2

- 29 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200