**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

------------------------------------------------------------------------x

| | |
|---|---|
| STELLIA LIMITED, a Maltese limited | : |
| liability company; and STELLIA, LTD., a Nevada | : |
| limited liability company, | : |
| | : |
| Plaintiffs, | :     Hon. Gloria M. Navarro |
| v. | : |
| | :     No. 2:12-cv-1099 |
| B+S CARD SERVICE GmbH, a German | : |
| limited liability company, | : |
| | : |
| Defendant. | : |

------------------------------------------------------------------------x

**DECLARATION OF PROF. DR. DR. H.C. WERNER F. EBKE, LL.M.**
**IN SUPPORT OF DEFENDANT B+S CARD SERVICE GMBH'S**
**MOTION TO DISMISS THE COMPLAINT**

**I.     Introduction**

1.       My name is Werner F. Ebke.  I am 61 years old, a professor of law at the University of Heidelberg School of Law at Heidelberg, Germany, and the managing director of the Law School's Institute of German and European Corporate and Business Law. I am a German and Swiss citizen.  I reside in Bottighofen, Switzerland.

2.       I submit this declaration on behalf of defendant B+S CARD SERVICE GmbH ("**B+S**") in support of B+S's motion to dismiss the Complaint.  The purposes of this declaration are to assist this Court in evaluating (1) the German regulations which govern B+S and the strong German interests those regulations are intended to protect, (2) the validity, exclusivity and reach of the forum selection and choice-of-law clauses agreed between the parties, and (3) the availability of a German forum to adjudicate this dispute.  To achieve these purposes, I explain the regulatory regime to which B+S is subject as a credit card acquirer licensed by the German Federal Financial Supervisory Authority under the German Payment Services Supervision Act.  I also explain pertinent features of the German system of civil justice and procedure and

demonstrate that the types of claims asserted by Stellia Limited ("**Stellia Malta**") and Stellia, Ltd. ("**Stellia Nevada**") (collectively, "**Stellia**") in the above-captioned action could be litigated in Germany.

     3.    I make this declaration on the basis of my personal knowledge, and my professional opinion, of the matters set forth below.

     4.    Although I have been asked by B+S to make this declaration, I consider it my duty to submit my independent explanation and impartial opinion to the Court.  I am not acting as an advocate for any of the parties.

     5.    I have been provided with and have reviewed the Complaint dated June 26, 2012 (the "**Complaint**") and the Agreement between B+S and Stellia Malta attached as Exhibit A to the Complaint (the "**Agreement**").

## II.    Background and Qualifications

     6.    I was educated both in Germany and in the United States of America.  In 1977, I received my first law degree (*Rechtsreferendar*) from the University of Münster School of Law, at Münster, Germany.  In 1978, the University of California at Berkeley School of Law (Boalt Hall) awarded me the degree of Master of Laws (LL.M.).  I hold a doctorate in law (Dr. iuris, S.J.D. equivalent) and the post-doctoral degree of *Habilitation* from the University of Münster School of Law as well as an honorary doctorate in economics (Dr. rer. pol.) from the European Business School at Wiesbaden, Germany.  I passed the bar exam (*Zweite juristische Staats-prüfung*) in Germany, and I am also a member of the bar of the State of New York and several Federal bars in the United States of America.  From 1983 until 1988, I was an assistant professor of American corporate law, financial accounting and international business law at the Southern Methodist University School of Law in Dallas, Texas.  From 1988 until 2004, I was a chaired professor of civil law, business law, tax law and private international law at the University of

Konstanz School of Law in Konstanz, Germany.  Since the Fall of 2004, I am the Chaired Professor of Civil Law, German and European Corporate Law at the University of Heidelberg School of Law at Heidelberg, Germany, and the managing director of the Law School's Institute of German and European Corporate and Business Law.  I was a judge of the District Court (*Landgericht*) of Konstanz at Konstanz, Germany.  I have also served as arbitrator (sole arbitrator, co-arbitrator or chairman, respectively) in over 70 domestic and international commercial arbitration cases (*ad hoc* arbitration cases as well as cases under the auspices of the ICC, DIS, and AAA).  I am a member of the American Law Institute in Washington, D.C.  I have published extensively in English, German, Spanish and French in various areas of the law, including corporate law, securities regulation, business law, conflicts of laws (private international law), international monetary law, European Union law, comparative law, bankruptcy law, accounting and financial disclosure, litigation involving auditors and the state debt crisis.

7.     I respectfully submit that I am competent to opine on German law, financial regulations, civil procedure, and the other matters addressed in the remainder of this declaration.

### III.     Regulation of B+S by the German Federal Financial Supervisory Authority

8.     As a credit card acquirer, B+S is licensed as a payment institution under the Payment Services Supervision Act (*Zahlungsdiensteaufsichtsgesetz*) and is subject to regulation by the German Federal Financial Supervisory Authority (*Bundesanstalt für Finanzdienst-leistungsaufsicht*) ("**BaFin**").[1]

9.     BaFin is the primary regulator of all German banks and financial services institutions and is responsible for licensing and supervising approximately 1,880 banks, 680

---

[1]     *See* the homepage of the German Federal Financial Supervisory Authority, http://www.bafin.de/EN.

financial services institutions, 600 insurance companies, 30 pension funds, 5,900 investment funds and 77 asset management companies in Germany.

10.     BaFin's primary objectives are to ensure the proper functioning, stability and integrity of the German financial system and to protect German consumers and investors. BaFin meets these objectives through comprehensive regulation of German financial companies' solvency, management and business practices. BaFin also answers approximately 26,000 consumer questions and handles approximately 21,000 enquiries and complaints against regulated companies each year.

11.     German law requires that all credit card acquirers such as B+S obtain a license from BaFin and comply with BaFin regulations and requirements. Before licensing a credit card acquirer such as B+S, the Authority inspects whether the acquirer complies with BaFin's threshold requirements for the proper functioning of payment institutions pursuant to Section 8 of the German Payment Services Supervision Act. BaFin's inspection covers the prospective acquirer's business model, business plan, capitalization, governance arrangements and internal control mechanisms. Once licensed, an acquirer must regularly report certain statutorily or regulatorily required information to BaFin and comply with BaFin's ongoing supervision and regulation.

12.     The purpose of BaFin's regulation of companies such as B+S is to ensure that merchant credit card transactions in Germany and elsewhere in Europe are reliable and efficient and, most importantly, to ensure that customer funds reach the merchants from whom customers have purchased goods or services. Through market supervision and regulation, BaFin enforces standards of professional conduct and protects the integrity of the German financial system, which is the largest in Continental Europe.

IV.     **Litigation of the Claims Asserted by Stellia in the German Courts**

4

**A.  Effect of the Forum Selection Clause against Stellia Nevada**

13.     The Complaint states that "Stellia Malta has made a written assignment to Stellia Nevada of four causes of action (breach of written contract, conversion, unjust enrichment, and for an accounting)".  (Compl. ¶ 35.)  I address this issue as a matter of German law because Art. 14 para. 2 Rome I Regulation[2] provides that "the law governing the assigned or subrogated claim shall determine its assignability, the relationship between the assignee and the debtor, the conditions under which the assignment or subrogation can be invoked against the debtor and whether the debtor's obligations have been discharged."  Therefore, the question whether the forum selection clause has an effect *vis-à-vis* the assignee Stella Nevada is determined by the law governing the assigned claim, *i.e.*, German law (see point VI(a) *infra*).

14.     Under German law, Stellia Malta's purported assignment to Stellia Nevada has no effect on the enforceability of the Agreement's forum selection clause because German law requires a contractual assignee to accept all of the rights and obligations its assignor had under the assigned contract.  This requirement arises under Section 398 of the German Civil Code (*Bürgerliches Gesetzbuch*)[3], which provides that "a claim may be transferred by the obligee to another person by contract with that person (assignment). When the contract is entered into, the new obligee steps into the shoes of the previous obligee."

15.     Accordingly, under these provisions, an assignee of a claim has the same rights and obligations as the assignor, and is bound by any forum selection clauses agreed on by the

---

[2]      Regulation (EC) No 593/2008 of 17 June 2008 on the law applicable to contractual obligations (Rome I) which governs the choice of law in the European Union. Rome I Regulation sets out the principles by which it is determined which state's laws govern the contractual obligations in civil and commercial matters in situations involving a conflict of laws. Rome I Regulation is directly applicable in Germany and has replaced national rules on conflict-of-contract-laws as well as the Rome Convention on the Law Applicable to Contractual Obligations of June 1980. As to the applicability of Rome I Regulation, see *Martiny* in: Münchener Kommentar zum BGB, 5th ed. 2010, Rom I-VO no. 5-15; *Ebke*, Das Internationale Privatrecht der Haftung des gesetzlichen Abschlussprüfers nach der Rom I-VO und der Rom II-VO, 109 ZVglRWiss 397, 408-409 (2010).
[3]      *See* translation of the German Civil Code available on the website of the German Federal Ministry of Justice at www.gesetze-im-internet.de/englisch_bgb/englisch_bgb.html.

assignor.[4]   Therefore, Stellia Nevada is bound by the forum selection clause of Art. 12 to the same extent as Stellia Malta is; a German court would draw no distinctions between these two entities in this regard.

### B.   Validity and Enforceability of the Forum Selection Clause

16.   Article 12 of the Agreement between B+S and Stellia Malta reads as follows:

*"Place of jurisdiction for both parties will be Frankfurt am Main."*

17.   Under German law, which governs the Agreement under both Article 12 thereof and under German conflict-of-law rules as discussed at Point VI *infra*, this clause confers exclusive jurisdiction over Stellia's claims on the courts of Frankfurt am Main.  German courts honor and enforce commercial forum selection clauses such as the one contained in the Agreement under the European Brussels I Regulation,[5] which is directly applicable in Germany and has replaced national law on international jurisdiction.   The Brussels I Regulation is applicable to all proceedings that have a link to the territory of an EU member state (cf. recital 8).

18.   The relevant provision is Art. 23 para. 1 Brussels I Regulation:

*1. If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:*

*(a) in writing or evidenced in writing; or*

*(b) in a form which accords with practices which the parties have established between themselves; or*

*(c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.*

---

[4]      *See* Court of Appeals (*Oberlandesgericht*) of Cologne, 1992 VersR 1152; *Grüneberg* in: Palandt, BGB, 71st ed. 2012, § 398 no. 18.

[5]      Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters. As to the applicability of Brussels I Regulation, see *Heinrich* in: Musielak, ZPO, 9th ed. 2012, § 38 no. 14.

19.     This provision requires that the Agreement' forum selection be enforced because the two parties to the Agreement – B+S and Stellia Malta – both have their seat in EU member states that have ratified and adopted the Brussels I Regulation and because B+S and Stellia Malta have complied with the written form stipulated by Art. 23 para. 1 sentence 3 lit. (a) Brussels I Regulation.  Further, German law permits parties to designate a specific court within Germany to resolve their disputes such as, in the instant case, the courts of Frankfurt am Main, and German courts enforce such selections (see point V.E., *infra*).

20.     As a German company with its registered seat in Frankfurt, B+S would also be subject to the international and local jurisdiction of the courts in Frankfurt am Main according to Art. 2, 60 para. 1 of the Brussels I Regulation and Section 17 of the German Code of Civil Procedure and could be sued in Frankfurt even without the forum selection clause of Art. 12 of the Agreement.

### C.  Exclusivity of the Jurisdiction Determined by the Forum Selection Clause

21.     As a matter of German law, the forum selection clause, which states that "jurisdiction for both parties will be Frankfurt am Main," makes Frankfurt the **exclusive** forum in which Stellia may bring the claims it pleads in the Complaint.  Under German law, clauses providing that a particular forum shall be the place to adjudicate the parties' disputes are presumed to be exclusive, as expressly stated in Art. 23 para. 1 sentence 2 of the Brussels I Regulation, which provides that "[s]uch jurisdiction shall be exclusive unless the parties have agreed otherwise." (*see* point IV(B) above).

22.     In this case, the contractual parties have not only failed to agree otherwise, but there are also several circumstances that support the legal presumption that the parties' forum selection clause is exclusive.

23.     First, the fact that the parties chose German law in the Agreement as governing law is a strong indication, under German law, that they wanted a German court to adjudicate any disputes arising out of or in connection with the Agreement because a German court would be most familiar with the applicable German law.[6]

24.     Second, reading the forum selection clause in the Agreement as permissive would render it meaningless as no forum selection clause is necessary to subject B+S to the jurisdiction of Frankfurt am Main's courts because B+S is domiciled in Frankfurt am Main and is therefore already subject to general jurisdiction there (Art. 2, 60 para. 1 Brussels I Regulation). Accordingly, for complaints against B+S, the forum selection clause only has independent meaning if it designates Germany as the *exclusive* forum.

25.     Third, B+S's business is purely European and, to a great extent, German.  B+S is registered in Germany, is owned entirely by other German entities, and has substantially all its offices, employees and records in Germany. A judgment against B+S would therefore be enforced in Germany. Accordingly, it is in the parties' best interest to bring claims, if any, before a court in Germany, which again supports the proposition that the parties wanted the forum selection clause to be exclusive.

26.     Accordingly, under German law, the forum selection clause is mandatory and cannot be disposed of unilaterally by any of the parties.  Consequently, Stellia may not bring its claims in a court other than a court in Frankfurt am Main.

27.     Moreover, Section 328 para. 1 no. 1 of the German Code of Civil Procedure prevents a German court from recognizing or enforcing any judgment rendered by a foreign court if according to German law, the foreign court did not have jurisdiction under the parties' contract

---

[6]     *See* Court of Appeals (*Oberlandesgericht*) of Munich, 1987 NJW 2186; Court of Appeals (*Oberlandesgericht*) of Dusseldorf, 1990 RIW 220, 221.

to adjudicate their dispute.  Under this provision, a German court would be unable to enforce a judgment for Stellia rendered by a court outside of Frankfurt am Main.

### D.  Scope of the Forum Selection Clause

28.     In my opinion, the forum selection clause applies to *all claims* Stellia asserts in its Complaint, not merely those which are asserted for breach of the Agreement itself.

29.     Under German law, an agreement concerning claims arising out of a contract generally extends to non-contractual claims as well, so long as the act or omission upon which those claims are based is closely related to the act or omission that constitutes the breach of contract.[7]  This principle ensures that a forum selection clause that is intended to be exclusive – as that between B+S and Stellia Malta (see above) – cannot be circumvented or rendered ineffective.[8]

30.     In this case, the alleged breaches of contract are based, *inter alia*, on the allegation that B+S provided delayed and inadequate notifications to Stellia Malta, made alleged false representations and promises, improperly terminated Stellia Malta's merchants, and without right retained monies that purportedly belonged to Stellia Malta.  Stellia's non-contractual causes of action, *i.e.*, violation of the Lanham Act, fraud, intentional interference with contracts, and unjust enrichment, all arise from these same alleged acts.  Accordingly, under German law, the forum selection clause extends to Stellia's non-contractual claims.

## V.    The German System of Civil Justice

### A.  Constitutional provisions and principles

31.     Germany is a civil law legal system.  Accordingly, Germany's core legal principles are codified rather than based upon judicial precedents or principles.

---

[7]      *Hausmann* in: Staudinger, BGB, 2011, IntVertrR no. 302.
[8]      Cf. *Gottwald* in: Münchener Kommentar zur ZPO, 3rd ed. 2008, EuGVO Art. 23 no. 67.

32.     The fundamental principles which govern the German legal system and the rights of parties in a court proceeding are set forth in the German Constitution (*Grundgesetz*)[9] and apply to both domestic and foreign litigants.[10]  The German Constitution guarantees, *inter alia*, the independence of the judiciary, the right of all parties to be heard, and the right to equal treatment under the law.

33.     The principles and rights which ensure the independence of the judiciary are set forth in Articles 97 and 101 of the German Constitution.  Article 97(1) provides that "judges shall be independent and subject only to the law."  Article 101(1) further provides that "extraordinary courts are not allowed" and that "[n]o one may be removed from the jurisdiction of their lawful judge."  Article 101(1) ensures that the composition of the court is determined by an abstract-general rule of the court and may not be arbitrarily modified.

34.     The principles and rights which guarantee that parties receive a fair trial and an opportunity to be heard are set forth in Articles 2, 20, and 103 of the German Constitution. Article 103(1) provides that "every person shall be entitled to a hearing in accordance with law." This provision gives every party in a judicial proceeding, whether civil or criminal, the right to have access to information concerning the proceeding as provided by Germany's rules of civil procedure and the opportunity to speak, be heard and file motions in the court proceeding before the court renders a decision concerning the party's rights or obligations.[11]  It also ensures that courts render independent, impartial and fair decisions in accordance with the law.[12]  Parties are

---

[9]     See translation of the German Constitution, published by the German Bundestag (Legislature) an available at https://www.btg-bestellservice.de/pdf/80201000.pdf.
[10]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of November 8, 1960, BVerfGE 12, 6, 8; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of April 7, 1965, BVerfGE 18, 441, 447; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of May 2, 1967, BVerfGE 21, 362, 373; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of April 12, 1983, BVerfGE 64, 1, 11; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of December 27, 2007, 2008 NVwZ 670.
[11]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of June 8, 1993, BVerfGE 89, 28, 35.
[12]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of October 7, 1980, BVerfGE 55, 72, 93.

also granted the right to fair trial according to Art. 20(3) in connection with Art. 2(1) of the German Constitution.[13]

35.     These provisions, taken together, require all judges in Germany to act in accordance with the law, to consider individual circumstances of a case in organizing proceedings and rendering decisions,[14] and to refrain from creating unfair procedural detriments for litigants.[15]   Instead, judges are required to apply procedural law in a manner that does not disproportionately burden any of the litigants.[16]

36.     In addition, the right to fair trial is secured by Art. 6 para. 1 of the European Convention on Human Rights, which provides that "[i]n the determination of his civil rights and obligations . . . everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal established by law."   According to the German Federal Constitutional Court, this Convention applies wherever it provides a higher standard of legal protection than the German Constitution.   Also, a party who believes that its rights under the Convention have been violated may take an additional appeal, after all domestic remedies have been exhausted, to the European Court on Human Rights (*see* Art. 35 para. 1 European Convention on Human Rights).

### B.  Duration of Proceedings in German Courts

37.     The German court having jurisdiction over Stellia's claims (if Stellia brought its action in Germany) is the Chamber for Commercial Matters of the Regional Court (*Landgericht*)

---

[13]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of August 9, 1981, 1991 NJW 3140; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of August 15, 1996, 1996 NJW 3202.
[14]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of April 26, 1988, BVerfGE 78, 123, 126; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of April 6, 1998, 1998 NJW 2044.
[15]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of May 22, 1979, BVerfGE 51, 188; Federal Constituttional Court (*Bundesverfassungsgericht*), decision of February 9, 1982, BVerfGE 60, 1; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of April 14, 1987, BVerfGE 75, 183; Federal Constitutional Court (*Bundesverfassungsgericht*), decision of June 25, 2003, 2003 FamRZ 1447.
[16]     Federal Constitutional Court (*Bundesverfassungsgericht*), decision of October 22, 2004, 2005 NJW 814.

of Frankfurt am Main (see *infra* at point IV.E.).  This court is capable of efficiently and expeditiously adjudicating cases like this one.

38.     Germany holds a good position in terms of the average length of court proceedings.  In the year 2011, trial-level proceedings in German Regional Courts (known as proceedings of first instance) took an average of 8.2 months.[17]

**C.  General Procedure for Litigation and Adjudication in German Courts**

39.     The rules of civil procedure for all civil matters except for family and certain non-contentious matters are set out in the Code of Civil Procedure (*Zivilprozessordnung*).  These rules ensure that parties have notice of all claims, the ability to present evidence and file motions, and the opportunity to be heard by the Court.

40.     Section 253 Code of Civil Procedure provides that a plaintiff may commence a civil action in the Court of First Instance (local or district court) by serving a written pleading (statement of claim) designating the parties and the court, exact information on the subject matter and the grounds for filing the claim, as well as a precisely specified petition.

41.     Upon commencement of an action, the Court provides service of the statement of claim upon the defendant, which the Court is required to do without undue delay.  The Court also instructs the defendant to appoint an attorney should the defendant intend to defend against the claim (Sections 271, 78 Code of Civil Procedure).

42.     Once the defendant receives notice of the plaintiff's claim, the presiding judge, at his or her discretion, either makes arrangements for an early first hearing (*früher erster Termin zur mündlichen Verhandlung*) or conducts preliminary proceedings in writing (*schriftliches Vorverfahren*) (Section 272 para. 2 Code of Civil Procedure).

---

[17]      https://www.destatis.de/DE/Publikationen/Thematisch/Rechtspflege/GerichtePersonal/Zivilgerichte21002-210117004.pdf?_blob=publicationFile.

43.     If the Court decides to hold an early first hearing, the summons must be served upon the defendant together with the statement of claim (Section 274 para. 2 Code of Civil Procedure).  The early first hearing may be held no less than two weeks from the time at which the statement of claim has been served upon the defendant (Section 274 para. 3 sentence 1 Code of Civil Procedure). The Court may set a deadline for the defendant to submit a written statement of defense in preparation for the early first hearing.  If the early first hearing does not resolve the parties' dispute, the Court will order the parties to submit further written statements and to prepare oral arguments for a main hearing (Section 275 para. 1, 2 Code of Civil Procedure).

44.     If, by contrast, the Court conducts preliminary proceedings in writing, it will instruct the defendant to give notice of intent to defend within two weeks of service of the statement of claim upon the defendant.  The Court will also set a deadline of at least two additional weeks for the defendant to submit a written statement of defense.  The Court may then set a deadline for the plaintiff to file a reply to the statement of defense (Section 276 Code of Civil Procedure).

45.     As a general rule, most legal disputes are dealt with and resolved in a comprehensively prepared oral hearing (main hearing or *Haupttermin*) rather than an early first hearing.  However, for purposes of seeking an amicable resolution of a given legal dispute, main hearings are preceded by a conciliation hearing (*Güteverhandlung*) (Section 278 Code of Civil Procedure).  If conciliation is not successful, the Court will hear arguments and evidence submitted by the parties directly thereafter.

46.     Following the taking of evidence, the court once again discusses with the parties the facts and legal arguments they have presented as well as the status of the dispute and, to the extent possible at this stage, the results obtained in taking evidence (Section 279 Code of Civil Procedure).  Based on the submissions of the parties and the evidence before the Court, the Court

decides, at its discretion and conviction, whether an allegation of fact is to be deemed true or untrue (Section 286 Code of Civil Procedure) and renders judgment and awards a remedy accordingly.

### D.  Taking of Evidence by a German Civil Code

47.     In German civil proceedings, each party has to present the evidence it relies on for its arguments.

48.     A German court obtains evidence, as submitted by the parties, by hearing witnesses or experts, through visual inspection, or through documentary evidence.  The procedure for taking evidence is governed by the Code of Civil Procedure (Sections 355 to 510b).

49.     The Court also has the authority to order disclosure of evidence in the possession of the other party.

50.     If it becomes necessary to take evidence in another EU member state such as Malta (where it appears Stellia Malta is incorporated and has its center of business) or the United Kingdom, the European Regulation on Cooperation between the Courts of the Member States in the Taking of Evidence in Civil or Commercial Matters[18] applies (the "**EC Regulation**"). This Regulation is directly binding on German Courts and is considered directly applicable law in Germany.

51.     The EC Regulation intentionally provides for more expedited and efficient procedures to obtain evidence than the Hague Convention.[19]  As described in recital 8 of the EC Regulation:

> *"The efficiency of judicial procedures in civil or commercial matters requires that the transmission and execution of requests for the performance of taking of evidence is to be made directly and by the most rapid means possible between Member States' courts."*

---

[18]     Council Regulation (EC) No. 1206/2001 of 28 May 2001 on Cooperation between the Courts of the Member States in the Taking of Evidence in Civil or Commercial Matters.

[19]     Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

52.     One key way the EC Regulation allows a German court to collect evidence more efficiently than the Hague Convention is by permitting a German court to address a respective request directly to the relevant court in the other jurisdiction (Art. 2 of the EC Regulation) whereas under the Hague Convention, the request must be routed via a Central Authority (Art. 2 Hague Convention, Section 1072 No. 1 Code of Civil Procedure).  Furthermore, under certain conditions, the German court can even directly take evidence abroad (Art. 17 of the EC Regulation, Section 1072 No. 2 Code of Civil Procedure). The Hague Convention does not allow such direct taking of evidence under any circumstances.

53.     Additionally, Art. 10 para. 1 of the EC Regulation provides that the requested court shall execute the request without delay and, at the latest, within 90 days of receipt of the request.  The Hague Convention does not provide for such a time limit.  Article 9 of the Hague Convention merely states "[a] Letter of Request shall be executed expeditiously."

54.     Article 10 No. 4 of the EC Regulation also permits a requesting court to ask the requested court to use communications technology to facilitate the taking of evidence, such as videoconferences and teleconferences.  The Hague Convention does not offer requesting courts this option.

**E.  German Court Having Jurisdiction**

55.     If Stellia were to bring this action in Germany, the dispute would be heard in the Chamber for Commercial Matters of the Regional Court (*Landgericht*) of Frankfurt am Main.

56.     The local jurisdiction ("venue") of a German court can be designated by an agreement of parties who are merchants as defined by Sections 1-7 of the Commercial Code, such as B+S and Stellia (Section 38 para. 1 Code of Civil Procedure).  Accordingly, as a matter of German law, the forum selection clause naming Frankfurt am Main as the place of jurisdiction in Art. 12 of the Agreement is valid and enforceable.

15

57.     The Regional Court (*Landgericht*) of Frankfurt am Main has subject matter jurisdiction to hear this case because the dispute between B+S and Stellia concerns claims involving an amount exceeding the sum of EUR 5,000 (Section 71 para. 1, 23 Courts Constitution Act, [*Gerichtsverfassungsgesetz*]).

58.     Stellia would be entitled to move that its action be heard by the Chamber for Commercial Matters at the Regional Court Frankfurt am Main, as the dispute concerns commercial matters within the meaning of Sections 94, 95, 96 Courts Constitution Act.  The Chamber for Commercial Matters consists of a professional judge of the Regional Court as presiding judge and two honorary commercial judges who have special expertise in commercial and business matters (Section 105 Courts Constitution Act).  This composition of the Chamber makes it possible to complement the legal expertise of the professional judge with the expert knowledge of commercial judges.

59.     Stellia would have available to it two kinds of legal remedies against decisions of the Regional Court of Frankfurt am Main.

60.     The first stage of appeal is an appeal to the Court of Appeals (*Oberlandesgericht*) of Frankfurt am Main (*cf.* Section 511 para. 1, 2 No. 1 Code of Civil Procedure, Section 119 para. 1 sentence 1 Courts Constitution Act).  The Appellate Court sits in panels of three professional judges, including the presiding judge, unless otherwise provided for by law (Section 122 para. 1 Courts Constitution Act).  The Court of Appeals reviews the decision of the Regional Court for violations of law, *i.e.*, whether a relevant legal norm has not been applied or has not been applied properly (Section 513, 546 Code of Civil Procedure).  It may also consider new facts and circumstances insofar as specific indications give rise to doubts as to the Regional Court having correctly or completely determined the facts relevant for the decision (Section 529 Code of Civil Procedure).  Stellia would have an automatic right to appeal to the Court of Appeals

(*Oberlandesgericht*) of Frankfurt am Main if the value of the subject matter of the appeal exceeds 600 Euros.

61.     As a second stage of appeal, Stellia could file an appeal on points of law with the Federal Supreme Court (*Bundesgerichtshof*) if, for example, the Court of Appeals has granted the right to appeal due to the fundamental significance of the matter or in order to ensure uniform adjudication (Section 542, 543 Code of Civil Procedure).

**VI.     Evaluation of the Causes of Action Asserted by Stellia under German Law**

62.     As I understand it, the Complaint alleges causes of action based on the law of contract (the second, third, fourth, seventh and eighth causes of action), causes of action sounding in tort (the first, fifth and sixth causes of action), one cause of action (the ninth cause of action) for unjust enrichment, and one statutory cause of action (the first cause of action) for allegedly making false statements about the defendant's services.

**A.  Governing Law**

**i.   Validity and Enforceability of the Governing Law Clause**

63.     Article 12 sentence 1 of the Agreement between B+S and Stellia Malta contains the following clause:

> *"This agreement shall be subject to the law of the Federal Republic of Germany."*

64.     German courts honor and enforce choice-of-law clauses contained in commercial contracts between individuals or entities.

65.     The law applicable to a contract is determined in Germany by the Rome I Regulation (see *infra* at IV(A)).

66.     Under Art. 3 para. 1 of the Rome I Regulation, the parties' choice of law, as in Art. 12 of the Agreement, is the primary factor in determining the law which applies to an agreement. Article 3 provides that "[a] contract shall be governed by the law chosen by the parties. The

choice shall be made expressly or clearly demonstrated by the terms of the contract or the circumstances of the case. By their choice the parties can select the law applicable to the whole or to part only of the contract." Recital (11) of the Rome I Regulation reinforces this principle, providing that "[t]he parties' freedom to choose the applicable law should be one of the cornerstones of the system of conflict-of-law rules in matters of contractual obligations."

67.    In accordance with these provisions of the Rome I Regulation, the Agreement's choice-of-law clause in Article 12 controls and makes German law applicable to the Agreement in its entirety.

68.    Further, German law also governs the existence and validity of the governing law clause itself (bootstrap principle, Art. 3 para. 5 in connection with Art. 10 para. 1 Rome I Regulation).

69.    According to applicable German law, the Agreement's choice-of-law clause is valid and fully enforceable because both parties have expressly and intentionally agreed to that effect.  Therefore, if claims based on the allegations of the Complaint were to be pursued in the Regional Court Frankfurt am Main, that Court, in my opinion, would hold that the choice-of-law clause is valid and enforceable and would apply German law concerning the contractual causes of action in the Complaint.

### ii. Law applicable to the claims based on unjust enrichment and tort

70.    If Stellia were to litigate its tort and unjust enrichment claims in the Regional Court Frankfurt am Main, it is my opinion that the Court would also enforce the German choice-of-law clause and apply German law to those claims.

71.     The law applicable to obligations arising out of unjust enrichment that concerns a contract is determined accessorily to the contract (Art. 10 para. 1 Rome II Regulation[20]).  Further, German law would also be applicable to Stellia's unjust enrichment claim, irrespective of a connection to the Agreement, because the alleged enrichment took place in Germany (Art. 10 para. 3 Rome II Regulation).

72.     Under German law, tort claims are subject to the law of the country that has, according to all the circumstances of the case, a "manifestly closer connection" with the tort (Art. 4 para. 3 sentence 1 Rome II Regulation) than the country in which the damage occurs (Art. 4 para. 1 Rome II Regulation) or the tortfeasor and the person sustaining damage both have their "habitual residence" (Art. 4 para. 2 Rome II Regulation). The required showing of a "manifestly closer connection" is satisfied where the parties have concluded a contractual agreement that is closely connected with the tort in question (Art. 4 para. 3 sentence 2 Rome II Regulation).  In the case at hand, the alleged claims based on tort are all closely connected with the Agreement between B+S and Stellia Malta (see *infra* at IV(D)).  Therefore, Stelia's tort claims are also governed by the law that, according to the parties' choice-of-law clause in the Agreement, shall govern the parties' contractual claims, *i.e.*, German law.

73.     Accordingly, it is my opinion that German law would be applicable to all claims Stellia asserts in its Complaint, not merely to those which are asserted for breach of the Agreement itself.

### iii.  Effect of the Governing Law Clause against Stellia Nevada

74.     Under German law, the governing law clause extends to the relationship between B+S and Stellia Nevada, Stellia Malta's purported assignee because under Art. 14 para. 2 of the

---

[20]     Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 on the law applicable to non-contractual obligations. It is applicable to all non-contractual claims that have arisen since January 11, 2009 (*Thorn* in: Palandt, BGB, 71st ed. 2012, (IPR) Rom II Vorbemerkung no. 1).

Rome I Regulation, the law governing the assigned claim determines the relationship between the assignee and the alleged debtor, as well as the conditions under which the assignment can be invoked against the debtor and whether the debtor's obligations have been discharged.  A German Court will therefore also honor and enforce the choice-of-law clause in relation to Stellia Nevada.

**B.  Claims under German law**

75.     Germany recognizes causes of action under German law which are similar to those Stellia pleaded under U.S. law in the Complaint, as follows:

76.     Stellia's first cause of action is for false advertising and unfair business practices in violation of the Lanham Act.  The German statute which proscribes false and misleading representations in commerce and unfair commercial practices is called the Act against Unfair Competition (*Gesetz gegen den unlauteren Wettbewerb*)[21].  This statute provides that unfair commercial practices shall be illegal if they tangibly impair the interests of competitors, consumers, or other market participants (Section 3 para. 1), with unfairness being defined to include, among other things, deliberately obstructing competitors (Section 4 No. 10 Act on Unfair Competition).

77.     This law also prohibits false statements in promotion or advertising and permits a plaintiff to recover damages if a person or entity (1) uses a commercial practice that contains untruthful information regarding the nature, attributes or rights of an entrepreneur, (2) acting with intent or negligently, and (3) thereby causes damage (4) to a market competitor (Section 2 para. 1 no. 3; Section 3; Section 5; Section 9 sentence 1 Act Against Unfair Competition).  For example, according to Section 5 para. 1 no. 1,

> *"a commercial practice shall be deemed to be misleading if it contains untruthful information or other information suited to deception regarding the following circumstances: the essential characteristics of the goods or services, such as availability,*

---

[21]     *See* translation of the Act against Unfair Competition available on the website of the German Federal Ministry of Justice at www.gesetze-im-internet.de/englisch_uwg/englisch_uwg.html.

*nature, execution, benefits, risks, composition, accessories, method or date of manufacture, delivery or provision, fitness for purpose, uses, quantity, specification, after-sale customer assistance, complaint handling, geographical or commercial origin, the results to be expected from their use, or the results or material features of tests carried out on the goods or services".*

78.     The Act against Unfair Competition includes several remedies for violations.  For instance, Section 9 provides that "[w]hoever, while acting with intent or negligently, uses an illegal commercial practice pursuant to Section 3 or Section 7 shall be obliged to compensate competitors for the damage arising therefrom."

79.     German law also grants damages based on tort (Section 823 para. 1 Civil Code) for interfering with an established and operating business if false statements are made negligently or intentionally concerning a business directly impairing that business.  In such cases, the injuring party is required to pay the damages caused by its conduct.

80.     Stellia's second, third, fourth and seventh causes of action are for breach of contract, breach of the contractual covenant of good faith and fair dealing, and negligence in connection with the Agreement.  German law provides similar causes of action under Sections 280, 241, 242, and 276 of the German Civil Code. Section 280 provides that if a party to a contract, acting intentionally or negligently, "breaches a duty arising from the obligation, the obligee may demand damages for the damage caused thereby". Section 242 obliges the parties to a contract to "perform according to the requirements of good faith, taking customary practice into consideration."   According to Section 241 para. 1, a party to a contract is entitled "to claim performance from the obligor".  Section 241 para. 2 provides that a contractual relationship "may also, depending on its contents, oblige each party to take account of the rights, legal interests and other interests of the other party".  Section 276 states that "[a] person acts negligently if he fails to exercise reasonable care".

21

81.     Depending on the rights and duties laid down in the specific contract, damages can be based on (1) nonperformance; (2) malperformance[22]; (3) delay in performance; or (4) breach of other contractual duties, *i.e.*, accessory obligations.  This latter category includes the obligation to take account of the rights, legal interests and other interests of the other party to the contract (Section 241 para. 2), as well as the obligation to truthfully inform the other party about facts and circumstances that are essential for the conclusion or performance of the contract (Section 242).

82.     Stellia's fifth cause of action is for fraud.  German law grants damages for fraudulent conduct under Section 823 para. 2 of the German Civil Code in connection with Section 263 of the German Criminal Code[23], which provide that any person who "with the intent of obtaining for himself or a third person an unlawful material benefit damages the property of another by causing or maintaining an error by pretending false facts or by distorting or suppressing true facts" is liable to make compensation to the other party for the damage arising from this conduct.

83.     Stellia's sixth cause of action is for intentional interference with contracts. Parties who are bound by a contract for the performance of continuing obligations, such as Stellia Malta and B+S, are under a special obligation to care for the interests of each other. A party that breaches this duty of care is liable to make compensation to the other party for the damage arising from this conduct.

84.     Moreover, German law grants damages for inducement to breach a contract by a third party who intentionally and improperly obstructs a competitor by inciting a contractual partner of the competitor to a breach of contract (Section 4 No. 10 in connection with Sections 3 and 9 Act on Unfair Competition). German law also grants damages based on tort (Section 826

---

[22]     *I.e.*, the obligor inadequately performs its contractual obligation.
[23]     *See* translation of the German Criminal Code available on the website of the German Federal Ministry of Justice at http://www.gesetze-im-internet.de/englisch_stgb/englisch_stgb.html.

Civil Code) if a person who, in a manner contrary to public policy, intentionally inflicts damage on another person. The injuring party is then liable to the other person to make compensation for the damage caused.

85.     Stellia's eighth cause of action is for conversion.  German law provides remedies for the conduct Stellia alleges in support of this claim as well.

86.     For instance, in a contract for the management of the affairs of another, German law requires that the agent return to the principal anything he or she obtains from carrying out the transaction, *i.e.*, money paid to him or her by others for the principal.  German law also provides remedies for wrongfully withholding money which belongs to someone else based on unjust enrichment.  According to Section 818 of the Civil Code, a claim for restitution comprises the amount of money withheld as well as interest which accrued during the time the money was withheld.

87.     German law also provides civil and criminal penalties for wrongfully withholding money held in trust for another.  Section 266 of the German Criminal Code provides that "[w]hoever abuses the power accorded him by . . . legal transaction to dispose of assets of another or to make binding agreements for another, or violates his duty to safeguard the property interests of another incumbent upon him by reason of statute, commission of a public authority, legal transaction or fiduciary relationship, and thereby causes damage to the person, whose property interests he was responsible for, shall be liable to imprisonment not exceeding five years or a fine."  Section 823 para. 2 of the Civil Code provides tort remedies for any acts which constitute withholding of money, embezzlement, or abuse of trust under Section 266 of the Criminal Code.

88.     Under these provisions, if someone intentionally or negligently abuses the power accorded him by statute or legal agreement to dispose of assets of another, or violates his duty to

safeguard the property interests of another incumbent upon him by reason of statute, he is liable to compensate the other party for the damage arising from this conduct.

89.     Stellia's ninth cause of action is for unjust enrichment. According to Section 812 of the German Civil Code, a claim for unjust enrichment is established if (1) the defendant has been enriched by the receipt of a benefit; (2) the enrichment is at the expense of the plaintiff; (3) the retention of the enrichment is unjust; and (4) there is no defense or bar to the claim.

90.     Stellia's final cause of action is for an accounting.  German law provides a similar remedy under Section 666 of the German Civil Code, entitled "duty of information and duty to render account", which states that a party entrusted with carrying out one or more transactions for another party is obliged to provide the party for which it is acting with required reports and, on demand, to provide information on the status of the transaction(s) and render an accounting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 19, 2012 in Bottighofen, Switzerland.

_____
WERNER F. EBKE